UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIDGEPORT MUSIC, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT HILL MUSIC, *et al* <br><br> Defendants. | No. 3:05-0377 <br><br> Jury Demand <br> Judge Campbell <br> Magistrate Judge Brown |

# MEMORANDUM OF LAW OF DEFENDANT UNIVERSAL-SONGS OF POLYGRAM INTERNATIONAL, INC. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

By this Motion for Partial Summary Judgment, defendant Universal-Songs of PolyGram International, Inc. ("USOP") seeks to limit the overreaching scope of infringement claims made by plaintiff Bridgeport Music, Inc. ("Bridgeport").

In this action, filed in 2005, Bridgeport alleges that USOP infringed its copyright in the musical composition *You'll Like It Too* through its licensing of and/or receipt of royalties from third party uses of a musical composition entitled *I Know You Got Soul*. Specifically, Bridgeport alleges that various recordings (none of which were created or released by USOP) of *I Know You Got Soul* contain a small portion of drums (and vocal panting) taken from *You'll Like It Too* and that USOP licensed or otherwise authorized the use of *You'll Like It Too* as embodied on those recordings. Based on that allegation, Bridgeport improperly seeks all, or a substantial portion of, (1) USOP's income for alleged infringements beyond the three-year statute of limitations governing copyright infringement claims; (2) USOP's income from ***foreign*** exploitation of *I Know You Got Soul*; (3) USOP's income in connection with licenses issued by USOP for the use of ***noninfringing*** portions of *I Know You Got Soul* in other works not at issue in this lawsuit; and (4) income received by USOP from Broadcast Music, Inc. ("BMI"), a performance rights society

that issues "blanket" licenses to restaurants, radio and television stations, Internet websites, and other public establishments to perform works in BMI's repertoire.

Accordingly, USOP seeks an order that Bridgeport cannot assert the following claims, for which there is no legal basis:[1]

- Any claims for infringement occurring more than three years prior to the filing of this suit on May 12, 2005 – i.e., prior to May 12, 2002. Section 507 of the Copyright Act sets a three-year statute of limitations for such claims.

- Any claims arising from the alleged exploitation of *I Know You Got Soul* outside the United States. It is well-established that the Copyright Act does not have extraterritorial application. Accordingly, USOP cannot be liable for any income it may have received from any foreign subpublishers, as any such income exclusively is derived from the exploitation of *I Know You Got Soul* abroad.

- Any claims arising from the licensing for use in other compositions of portions – i.e., sampling – of *I Know You Got Soul* that are not alleged to infringe *You'll Like It Too*. Any such licensing cannot give rise to an infringement claim because the licensed compositions do not use any portion of Bridgeport's composition.

- Any claims arising from USOP's receipt of income from third party BMI for the public performance of *I Know You Got Soul*. There is no dispute that Bridgeport registered *You'll Like It Too* with BMI and that BMI, in turn, licensed use of that composition – as well as *I Know You Got Soul* and all other BMI compositions – to its licensees via its standard "blanket" public performance licenses. Accordingly, any public performance of a portion of *You'll Like It Too* as part of *I Know You Got Soul* pursuant to such licenses has been licensed by Bridgeport's agent and cannot constitute infringement.

In light of the foregoing, the **only** claims (and damages) that should remain at issue in this action are those arising from the **domestic** exploitation of recordings containing *I Know You Got*

---

[1] This motion does not address the issue of whether *I Know You Got Soul* infringes *You'll Like It Too* (including the related issues of whether a sample of *You'll Like It Too* is present in *I Know You Got Soul* or, if so, whether such sample is copyrightable or *de minimis*).

*Soul* from May 12, 2002 to May 12, 2005 – and not any of Bridgeport's ancillary claims for foreign royalties, pre-2002 royalties, royalties from "second-generation" samples of *I Know You Got Soul*, or public performance income.

I. STATEMENT OF FACTS.

**USOP's Domestic Administration Of *I Know You Got Soul*.** Pursuant to a December 18, 1987, agreement between Island Music, Inc. ("Island") and Robert Hill Music, Island acquired a portion of the musical composition *I Know You Got Soul*. Declaration of Robert Allen ("Allen Decl.") ¶ 5 & Ex. 1. In or about 1989, USOP acquired Island's catalog of musical compositions (including *I Know You Got Soul*). Id.

As a music publisher, USOP does not manufacture, distribute, or sell any products containing *I Know You Got Soul* – including any album containing *I Know You Got Soul*. Allen Decl., ¶ 7. Nor does USOP publicly perform any of its musical compositions. Id., ¶ 12. Rather, USOP is in the business of owning and administering its catalog of musical compositions. Id., ¶ 7. As the administrator of *I Know You Got Soul*, USOP has licensed the use of *I Know You Got Soul* by third parties (including third party record companies) and collected and disbursed income in connection with such licenses. Id.

**International Administration of *I Know You Got Soul*.** USOP's direct administration of *I Know You Got Soul* is limited to the United States and Canada. Allen Decl., ¶ 8. USOP has entered into agreements with third parties – i.e., "subpublishers" – by which the subpublishers administer *I Know You Got Soul* in all other countries. Id. The subpublishers issue licenses and account to USOP for publishing income ***received in their territory*** in exchange for an "administration" fee (typically a percentage of the income collected on the work). Id. Thus, for example, if a company wishes to license *I Know You Got Soul* for exploitation in Hong Kong, the company would contact the Hong Kong sub-publisher – not USOP – for the appropriate license.[2]

---

[2] Some (but not all) of USOP's foreign subpublishers are companies affiliated with the Universal group of companies in that the ultimate parent of some of those subpublishers is the same as the parent company that owns USOP. Allen Decl., ¶ 10. However, USOP does not own or control

(continued…)

Administration rights granted to subpublishers are exclusive in the subpublisher's particular territory. Id., ¶ 9. Accordingly, all income accounted to USOP by any particular subpublisher in connection with *I Know You Got Soul* reflects (and is derived from) the exploitation of *I Know You Got Soul* **only** in that subpublisher's particular foreign territory. Id., ¶ 9.

**BMI And Public Performance Rights With Respect to *I Know You Got Soul* and *You'll Like It Too*.** USOP does not, and never has, publicly performed *I Know You Got Soul*. Rather, licenses for the public performance of *I Know You Soul* – as for Bridgeport's *You'll Like It Too* – are issued through BMI. Allen Decl., ¶ 12; Declaration of Marvin L. Berenson ("Berenson Decl."), ¶ 5. Both *I Know You Got Soul* and *You'll Like It Too* are registered with BMI. Berenson Decl., ¶ 5.

BMI is a "performance rights society"[3] which obtains from its members (songwriters, music publishers, and other copyright owners of musical compositions) the right to sublicense the public performance of its members' musical compositions by third parties, such as radio stations, restaurants, and television stations. Berenson Decl., ¶¶ 2-3; Woods v. Bourne Co., 60 F.3d 978, 984 (2d Cir. 1995) ("[b]y becoming members of [a performance rights society], authors and publishers may transfer to it the public performance rights in their works. [The society] in turn issues licenses to radio stations, television stations, restaurants, stores and other entities that "perform" music publicly"); A. & B. Kohn, Kohn on Music Licensing 916-17 (3d ed. 2002) ("Upon affiliation with a society, songwriters and copyright owners grant to performance rights societies a [nonexclusive] license to sublicense the rendition of public performances of their musical works.") BMI then "monitor[s] the public performance of music in [its] respective

---

(…continued)
any of its foreign subpublishers and is not owned or controlled by them. Id. USOP and its foreign subpublishers are different companies, with different employees and different management structures. Id.

[3] Performance rights societies are expressly defined in the Copyright Act, and BMI is explicitly included in that definition. See 17 U.S.C. § 101 ("[a] 'performing rights society' is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc.").

countr[y] [and] distribute[s] the royalties to [its] members -- the songwriters and publishers." Quiroga v. Fall River Music, Inc., Case No. 93 CIV. 3914(RPP), 1998 WL 851574, *2 n.5 (S.D.N.Y. Dec. 7, 1998). See also Berenson Decl., ¶¶ 2-3.

BMI relies largely on the issuance of "blanket" performance licenses to entities engaged in the public performance of musical compositions – such as radio and television stations, cable networks and systems, web sites and mobile entertainment services, restaurants and bars, hotels, aerobics studios, cruise lines, corporate offices, bowling alleys, theme parks, colleges and universities, and jukebox operators. Berenson Decl., ¶ 3. A blanket license "grants to the music user for its term the right to perform *all the music in [BMI's] catalogue* upon payment of a flat fee which does not vary according to the number of…compositions used by the licensee or the number of programs in which they are played." Schwartz v. Broadcast Music, Inc., 180 F. Supp. 322, 330 (S.D.N.Y. 1959) (emphasis added); Kohn at 918 ("[p]ersons or entities acquiring public performance licenses pay ASCAP and BMI an annual fee for the privilege to render an unlimited number of nondramatic performances of one or more of any of the hundreds of thousands of songs in their respective catalogs. Because of its extraordinarily broad coverage, this type of licensing arrangement is called a blanket license"). See also Berenson Decl., ¶¶ 3-4 & Exs. 1-3. BMI issues thousands of such blanket licenses and collects license fees from its licensees. Id. Then, using various formulas, BMI apportions those license fees among its affiliated writers and music publishers. Allen Decl., ¶ 12. Accordingly, income accounted by BMI to its affiliated writers, including USOP and Bridgeport, is attributable to licenses issued by BMI and license fees collectively paid to BMI from its licensees. Because a blanket license covers *all* of the works contained in BMI's repertoire, a blanket licensee of BMI is granted the right to publicly perform both *You'll Like It Too* and *I Know You Got Soul* – both of which are in BMI's repertoire. Berenson Decl., ¶ 5 & Exs. 1-3.

**Procedural History.** Bridgeport initially asserted claims arising from the alleged use of *You'll Like It Too* in *I Know You Got Soul* in May 2001 as Count 222 of its complaint in Bridgeport Music, Inc. v. 11C Music, Case No. 3:01-0412. See Complaint, Case No. 3:01-0412, ¶ 2467. Pursuant to this Court's order of July 25, 2001, Bridgeport's claims involving *I Know*

*You Got Soul* were severed from the remaining 485 counts and became the case entitled Bridgeport Music, Inc. v. Crited Music, Case No. 3:01-0916 (Case 916).

On February 2, 2005, the Court denied Bridgeport's request to file an amended complaint in Case 3:01-0916 to add new allegations concerning USOP's infringement of *You'll Like It Too* in *I Know You Got Soul*. (Case No. 3:01-0916, Docket No. 83). Apparently in response to that order, on May 12, 2005, Bridgeport filed its Complaint in this action. See Complaint, ¶ 2. In its Complaint, Bridgeport alleges that USOP:

> "engaged in improper conduct and infringement [by] licensing to, and authorizing, others to reproduce and distribute [*I Know You Got Soul*] in Infringing Sound Recordings and Records, and improperly receiving and paying fees and royalties generated by Plaintiff's copyright in 'You'll Like It Too' resulting from the commercial exploitation of [*I Know You Got Soul*] and Infringing Sound Recordings, including income derived from Record sales, print editions of sheet music, synchronization fees for audio-visual works, other licensing fees, performance royalties, digital distribution, among other sources known to the Defendants herein." Complaint, ¶ 36.

Written discovery in this action is complete, and the case is set for trial on November 7, 2006.

## II.  THE LEGAL STANDARD.

Fed. R. Civ. P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted…may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all ***or any part thereof***." (emphasis added). A motion for summary judgment (including for partial summary judgment) should be granted "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See United States v. International Fidelity Ins. Co., 200 F.3d 456, 459 (6th Cir. 2000). "The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only 'show[] – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case." Metro Communications Co. v. Ameritech Mobile Communications, Inc., 984 F.2d 739, 741 (6th Cir. 1993). The burden then shifts to the nonmoving parties, who "must present more than a mere scintilla of evidence in support of their position; [it] must present

evidence 'on which the jury could reasonably find for the plaintiff'. . . ." Id. at 743, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### III. BRIDGEPORT'S CLAIMS ARE LIMITED TO THE THREE-YEAR LIMITATIONS PERIOD MAY 12, 2002 TO MAY 12, 2005.

Bridgeport's claims should be limited to the three-year period prior to the filing of its complaint on May 12, 2005 under the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b) ("[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). Pursuant to Section 507(b), a defendant "is only liable for his acts of infringement committed *within three years prior to Plaintiffs' lawsuit*." Makedwde Publishing Co. v. Johnson, 37 F.3d 180, 181 (5th Cir. 1994) (emphasis added), citing Hoste v. Radio Corp. of America, 654 F.2d 11, 11 (6th Cir. 1981). Recovery "is allowed only for those acts occurring within three years of suit and disallowed for earlier infringing acts." Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992), cert. denied, 508 U.S. 906 (1993). See also Merchant v. Levy, 92 F.3d 51, 57 n. 8 (2d Cir. 1996) ("recovery is barred for any infringing acts occurring more than three years prior to suit."). Bridgeport filed this action on May 12, 2005. Accordingly, it cannot recover for any conduct prior to May 12, 2002.

The claims in this action plainly "accrued" prior to May 2002. Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 ("Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed….") A claim for copyright infringement "accrues when a plaintiff knows of the infringement or is chargeable with such knowledge." Rhyme Syndicate, 376 F.3d at 621 (*citing* Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)). In this case, there can be no dispute that Bridgeport had *actual* knowledge of its claims in this action by May 4, 2001 (at the very latest) when it filed its omnibus lawsuit against USOP, alleging that *I Know You Got Soul* infringes *You'll Like It Too*. To the extent this lawsuit involves *any* recordings that were released prior to 2002 (e.g., "Paid In Full," "The 18th Letter," and "This or That"), such

recordings were identified in Bridgeport's original complaint. See Complaint, Case No. 3:01-0412, ¶¶ 2467, 3059. Accordingly, there can be no dispute that Bridgeport was aware of these or other infringing recordings of *I Know You Got Soul*, and there is no basis for any equitable tolling or other relief from the statute of limitations.

IV. **USOP CANNOT BE LIABLE FOR ANY EXPLOITATION OF *I KNOW YOU GOT SOUL* OUTSIDE THE UNITED STATES, AND THUS BRIDGEPORT CANNOT RECOVER ANY INCOME RECEIVED BY USOP FROM FOREIGN SOURCES, INCLUDING FROM FOREIGN SUBPUBLISHERS.**

Bridgeport's claims purport to include ***all*** third party uses of *I Know You Got Soul* throughout the world (see Complaint, ¶ 36), including, apparently ***all*** of the income that USOP has received, from ***all sources – including foreign sources***. As a matter of law, however, USOP cannot be liable for any uses of *I Know You Got Soul* outside the United States.

It is an "undisputed axiom" that "the United States' copyright laws have no application to extraterritorial infringement." Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1095. See also Twin Books Corp. v. Walt Disney Co., 83 F.3d 1162, 1167 (9th Cir. 1996) ("copyright laws have no extraterritorial operation"); Seals v. Compendia Media Group, 2003 WL 731369, * 4 (N.D. Ill. 2003) ("It is well established that infringing acts that take place wholly outside the United States are not actionable under the Copyright Act."); Iverson v. Grant, 946 F. Supp. 1404, 1410 ("It is a long-standing principle that United States copyright laws do not have extraterritorial operation."). A corollary to this principle is that the "***mere authorization***" of allegedly infringing acts abroad cannot give rise to a claim under the Copyright Act – even where such "authorization" took place within the United States. Subafilms, 24 F.3d at 1099 ("We hold that the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside the United States does not state a claim for infringement under the Copyright Act."). Accord Fun-Damental Too, Ltd. v. Gemmy Indus. Corp, 1996 WL 724734, *4 (S.D.N.Y. 1996) ("[M]ere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts."); Seals at *4 ("[D]omestic authorization of

wholly extraterritorial infringement does not constitute an act of infringement that circumvents the territoriality rule."); Iverson, 946 F. Supp. at 1412 ("This Court agrees with the Ninth Circuit's decision in Subafilms that to hold a party liable as an infringer for violating the authorization right when the party that it authorized could not be considered an infringer under the Copyright Act would be inconsistent with the general principles of third party liability.") There is good reason for this rule: because the act of "authorizing" another to commit copyright infringement is, at most, an act of *secondary* (contributory) infringement – not direct infringement – in order to be liable for such "authorization," it must be authorization of conduct that is actionable under the Copyright Act. "To hold otherwise would produce the untenable anomaly, inconsistent with the general principles of third party liability, that a party could be held liable as an infringer for violating the 'authorization' right when the party that it authorized could not be considered an infringer under the Copyright Act." Subafilms, 24 F.3d at 1094. Authorization to make or sell copies of an allegedly infringing work outside the United States is *not* authorization to infringe under the United States Copyright Act.

In Subafilms, the owner of rights in the motion picture "Yellow Submarine" brought an action against the distributor of the film, MGM/UA Communications Co. ("MGM/UA") arising from UA's execution of license agreements authorizing third parties located abroad to distribute the film on videocassette "around the world." The Ninth Circuit, sitting *en banc*, held that no liability could attach to the defendant for authorizing the distribution of the film in foreign territories to the extent the distribution took place entirely outside the United States and thus was not actionable under the Copyright Act. In so holding, the Court reasoned that because "authorization" was not an independent act of infringement under the Copyright Act, any claims premised on a defendant's "authorization" of infringing acts must be tied to acts of direct infringement actionable under the Copyright Act. Extraterritorial acts are not so actionable:

> "Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five Section 106 categories must be read as extending 'no farther than the [United States'] borders…. In light of our above conclusion that the 'authorization' right refers to the doctrine of contributory infringement, which requires that the authorized act itself could violate one of the exclusive rights listed in section 106(1)-(5), we believe that it is simply not possible to draw a principled distinction between an act that does not violate a copyright because it is not the type of conduct proscribed by section 106, and one that does

not violate section 106 because the illicit act occurs overseas…. In both cases, the authorized conduct could not violate the exclusive rights guaranteed by section 106." 24 F.3d at 1094.

Likewise here, any act of reproduction, distribution, or adaptation of *I Know You Got Soul* **outside the United States** by any person or entity is not actionable under the Copyright Act, and thus cannot serve as a basis for infringement liability against USOP. Nor can USOP be liable for "authorizing" (or licensing) any such acts – which is all that USOP even arguably has done. Indeed, any such authorization is, at best, twice removed from any act of exploitation, because all that USOP has done is authorize its ***foreign subpublishers*** to issue licenses for the ***foreign exploitation*** of *I Know You Got Soul*. It is those subpublishers which then issued licenses authorizing the exploitation of *I Know You Got Soul* in their respective foreign territories, and then account back to USOP for monies received from those licenses. Accordingly, all monies received by USOP from such foreign subpublishers in connection with *I Know You Got Soul* indisputably are derived only from ***extraterritorial*** uses of *I Know You Got Soul*. As such, they are not recoverable in this action.[4]

Bridgeport apparently intends to base its claim for foreign royalties on a narrow exception to Subafilms and its progeny, articulated in Los Angeles News Service v. Reuters Television International, Ltd., 149 F.3d 987 (9th Cir. 1998), that permits recovery of certain profits for foreign acts of infringement that stem from a predicate infringing act that has been ***completed within*** the United States. That exception does not apply here. In Reuters, the plaintiff was the owner of copyright in a videotape taken during the 1992 Los Angeles riots. The plaintiff licensed the videotape to NBC, which then, without authorization, transmitted the footage to another entity, Visnews (a joint venture of Reuters), in New York. Visnews then copied the footage in New York and transmitted it to various entities overseas, as well as to the New York office of the European Broadcasting Union, which in turn made a copy in New York and transmitted the copy to Reuters in London. The District Court held that the plaintiff was not

---

[4] That some of USOP's subpublishers are affiliated companies does not affect the analysis. Even if it were ***USOP*** itself that licensed the foreign use, the use nevertheless would not be infringing and USOP could not be liable for merely authorizing that use.

entitled to any profits in connection with the foreign transmission of the videotape, and the Ninth Circuit reversed, holding that *copying* of the videotape *in New York* was a *completed* act of domestic infringement which made the situation distinguishable from Subafilms:

> "The district court's ruling was premised on the assumption that LANS's claim was based on the transmissions from Visnews and EBU to Reuters. However, it also held that Visnews completed acts of infringement in the United States *when it copied the works in New York* and then transmitted them to EBU which *also copied them in New York*. Each act of copying constituted a completed act of infringement…. *This case presents a situation different from that in Subafilms*… The issue before us – which the Subafilms court did not resolve – is whether LANS 'may recover damages for international distribution of the [works] based on the theory that an act of direct infringement, in the form of a reproduction of the… [works] took place in the United States." 149 F.3d at 992 (emphasis added).

In its opinion, the Reuters Court also expressly distinguished the facts before it from the situation, as here, in which the acts of infringement takes place entirely abroad or where the only domestic act is the mere *authorization* of the foreign infringement. 149 F.3d at 992. "A party becomes liable for extraterritorial damages *only* when an act of infringement occurs within the United States, subjecting it to liability as an infringer (or contributory infringer) under the Copyright Act." Id. (emphasis added). By contrast, USOP never has engaged in *any* act of reproduction or distribution of *I Know You Got Soul* within the United States – much less as a "predicate act" to any foreign exploitation of the work. All it has done is to merely authorize its subpublishers to, in turn, authorize the use of the work by third parties solely in foreign territories. Courts subsequently interpreting Reuters and Subafilms uniformly have held that authorization is not a "predicate act" under Reuters and thus it does not does not apply in such circumstances. See Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628, 634-35 (rejecting argument that authorization is a "predicate act of infringement": "[I]t is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute an infringement of rights secured by Unites States law."); Seals at *4 ("Contrary to plaintiff's assertion [that authorization is a "predicate act" under Reuters], domestic authorization of wholly extraterritorial infringement does not constitute an act of infringement that circumvents

the extraterritoriality rule.")[5] Accordingly, USOP cannot be liable for *any* income it may have received from any foreign acts of infringement.

## V. USOP CANNOT BE LIABLE FOR ANY DAMAGES OR PROFITS IN CONNECTION WITH ITS LICENSING OF SAMPLES OF *I KNOW YOU GOT SOUL* FOR USE IN OTHER WORKS.

Bridgeport also seeks to recover damages in connection with USOP's purported licensing of portions (or samples) of *I Know You Got Soul* for use by third parties in other musical compositions. Since May 2002, USOP has issued only two such licenses: (1) to EMI April Music, Inc., Inouye Music, and Music of Windswept for the use of portions of *I Know You Got Soul* in *International Affair*, and (2) to WB Music Corp., Surrounded by Idiots Music, and Kingston 8 Publishing for the use of portions of *I Know You Got Soul* in *Cop that Shit*. Allen Decl., ¶ 11, Exs. 2 & 3. Any claims arising from these two licenses must be excluded from this lawsuit for the basic reason that neither license authorized the use of any portion of *You'll Like It Too* (or, for that matter, any allegedly infringing portion of *I Know You Got Soul*).[6] Id. See also Declaration of Marc E. Mayer, ¶ 2, Exs. 1-4. Accordingly, by issuing sample licenses for these works, USOP has not engaged in any act of infringement. Nor has it contributed to or authorized any act of infringement by any third party. See Subafilms, 24 F.3d at 1094 (no contributory infringement liability without an act of direct infringement).[7]

---

[5] Bridgeport may cite Curb v. MCA Records, Inc., 898 F. Supp. 586, 593-94 (M.D. Tenn. 1995) in support of a theory of infringement by authorization. Curb does not assist Bridgeport's position. In Curb, the court distinguished Subafilms (and thus declined to enter summary judgment or judgment on the pleadings for Curb) based on its finding that there was a disputed material fact as to whether a ***completed act of infringement*** took place by Curb within the United States. See 898 F. Supp. at 594 ("Curb's unauthorized creation of duplicate master tapes for release into [foreign] countries would appear to amount to an infringement of MCA's reproduction right.") For that reason, the Court could not determine (and did not determine) whether Curb's acts were limited to "mere authorization," as is the case here. This is entirely consistent with both Subafilms and Reuters.

[6] Bridgeport's claims here arise from the alleged use of the ***drums*** from *You'll Like It Too* in *I Know You Got Soul*. By contrast, the sample licenses sought use of only the ***lyrics*** from *I Know You Got Soul*.

[7] Bridgeport may argue that it can seek revenues in connection with sample licenses issued ***prior*** to May 2002. However, such licenses indisputably were issued prior to the 3-year limitations

(continued…)

Bridgeport presumably will argue that it nevertheless may recover damages for the sample licenses because *I Know You Got Soul* is an infringing musical composition, and thus any income or profits resulting from the licensing of that work is "attributable" to the alleged infringement (*i.e.* the use of *You'll Like It Too* therein) and thus recoverable in this action. The argument is meritless. In order to recover any of USOP's profits – especially profits in connection with licensing *I Know You Got Soul* for use in non-infringing works, Bridgeport must meet its burden of proving "a legally sufficient causal link between the infringement and subsequent indirect profits." Mackie v. Reiser, 296 F.3d at 914-15; University of Colorado Found., Inc. v. American Cyanamid Co., 196 F.3d 1366, 1375 (Fed. Cir. 1999) (plaintiff has the "burden" of demonstrating nexus between infringement and profits). Further, such a causal link must be "necessary, immediate, and direct." Sunset Lamp Corp. v. Alsy Corp., 749 F. Supp. 520, 525 (S.D.N.Y. 1990); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) ("[Plaintiff] could survive [a] motion for summary judgment only by adducing specific, non-speculative evidence supporting the existence of a link between the infringement and the Defendants' supposedly enhanced revenues.") Bridgeport has not presented or proffered ***any*** evidence that any request to license portions of *I Know You Got Soul* for use in *International Affair* or *Cop That Shit* was the result of the alleged presence of any portion of *You'll Like It Too* in *I Know You Got Soul*. If anything, the evidence is to the contrary. Licenses for *I Know You Got Soul* were sought only for portions of the work which are ***not*** alleged to be infringing – which were the only portions that USOP licensed and the only portions used. Allen Decl., ¶ 11, Exs. 2 & 3; Mayer Decl., Exs. 1-4.

---

(…continued)

period. See *supra* at 7-8. There is no dispute that Bridgeport was aware of any "second generation sampling" claims that occurred prior to 2002 many years prior to the filing of this lawsuit in 2005, since Bridgeport filed its initial lawsuit in May of 2001. Additionally, documents reflecting the existence of pre-2002 sample licenses were provided to Bridgeport by USOP in late 2001 and early 2002. Mayer Decl., ¶ 5.

## VI. BRIDGEPORT CANNOT RECOVER ANY INCOME RECEIVED BY USOP FROM BMI IN CONNECTION WITH PUBLIC PERFORMANCES OF *I KNOW YOU GOT SOUL*.

Bridgeport is precluded from recovering any income that USOP may have received from BMI in connection with any alleged public performance of *I Know You Got Soul* because, even assuming that *I Know You Got Soul* is infringing, such performances were licensed, non-infringing uses. This is because to the extent USOP received income from BMI for public performances of *I Know You Got Soul*, such public performances were licensed by BMI under the terms of its "blanket" licenses. Such "blanket" licenses authorize the public performance of **all** works in BMI's repertoire – including **both *I Know You Got Soul* and *You'll Like It Too***. Berenson Decl., ¶¶ 4-5 & Ex. 1 (Radio Station Agreement: "BMI grants to LICENSEE for the Term a non-exclusive license to publicly perform in the U.S. Territory, by radio broadcasting on Station, non-dramatic performances of all musical works in the BMI Repertoire during the Term."); Ex. 2 (Web Site Agreement: "BMI hereby grants you a non-exclusive license to perform publicly…within the Territory…during the Term **all musical works, the right to grant public performing right licenses of which BMI owns or controls** during the Term."). Accordingly, even if *I Know You Got Soul* is assumed to contain portions of *You'll Like It Too*, USOP cannot be liable for such performances (and specifically cannot be liable for authorizing such performances), because any entity that publicly performed *I Know You Got Soul* also was licensed by BMI to perform all or part of *You'll Like It Too*. Such a license is a complete defense to any claim of copyright infringement. See Freeplay Music, Inc. v. Cox Radio, Inc., 404 F. Supp. 2d 548, 553-54 (S.D.N.Y. 2005) (performance of musical composition in allegedly unauthorized derivative work was covered by BMI blanket license); Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998) ("[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement"); Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1338 (9th Cir. 1990) ("anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute...is not an infringer"). The BMI blanket licenses do not exclude (and thus by implication *include*) any use

of *You'll Like It Too* as allegedly incorporated in another BMI work (such as *I Know You Got Soul*).[8]  See Berenson Decl., Exs. 1-3; Freeplay, 404 F. Supp. 2d at 553.

Freeplay, 404 F. Supp. 2d at 552-54, is on point. The plaintiff, the owner of rights in certain musical compositions filed suit against the owners of radio stations, alleging that the defendants had infringed the copyright in the Plaintiff's musical compositions by broadcasting its music as background music during advertisements or promotional spots. The defendants moved for summary judgment, arguing that the claims were barred by blanket licenses that the defendants obtained from BMI, which indisputably covered (and thus licensed the defendants to publicly perform) the plaintiff's songs. The issue, as the Court characterized it, was "whether the licenses authorize the Broadcasters to play recordings that incorporate Freeplay's compositions, the making of which infringed Freeplay's reproduction rights." 404 F. Supp. 2d at 552. The Court held that the licenses did authorize such conduct. In entering summary judgment for the defendant, the Court also expressly rejected the plaintiff's argument that the BMI licenses did not cover the conduct (or that the works as performed were not in the BMI repertoire) because the advertisements were unauthorized "synchronizations" or "derivative works":

> "Here…the Broadcasters have a performance license from Freeplay, via BMI…. [R]egardless of any violation of reproduction rights that may have occurred in the creation of a piece of programming, a party who has the right to *perform* the copyrighted work can perform it without itself becoming liable for the underlying infringement…. ***Either way…the broadcaster has the right to perform the work, and the fact that the program was 'tainted' by [the producer's] unauthorized use of the work does not defeat that right.***

> "Nor is Freeplay assisted by its argument that although its works themselves are part of the 'BMI Repertoire' licensed to the Broadcasters for performance, 'if an advertiser illegally synchronizes a musical composition with other music, words, and/or other sounds to create a radio commercial, then that radio commercial constitutes a derivative work and is a new composition which is *not* in the BMI Repertoire.'… The Copyright Act only gives copyright holders (of sound recordings or musical compositions) the exclusive right 'to *prepare* derivative works based upon the copyrighted work… It says nothing about the right to *perform* such [derivative] works…. By broadcasting a putative derivative work created by a third party advertiser, the Broadcasters did not *prepare* a derivative work…. They thus did not infringe Freeplay's right to control the creation of derivative works as granted by section 106(2)."

---

[8] By contrast, the BMI blanket licenses *do* specifically exclude certain types of uses, such as dramatic performances (Berenson Decl., Ex. 1), more than 30 minutes of a full-length dramatic work (Id), and jukebox performances (Id., Ex. 3).

Freeplay, 404 F. Supp. 2d at 553-54 (emphasis added; internal quotations and citations omitted). See also Jackson v. Stone & Simon Adver., Inc., 188 U.S.P.Q. 564 (E.D. Mich. 1974) (BMI blanket licenses were a complete bar to an action claiming that the plaintiff's performance rights were violated when television stations broadcast a commercial containing an unauthorized synchronization of the plaintiff's music.)

Likewise here, whether *I Know You Got Soul* infringes, or even is an unauthorized "derivative work" of, *You'll Like It Too*, is beside the point – including because the third parties that publicly performed the work are not alleged to have reproduced *You'll Like It Too* or otherwise created a derivative work of *You'll Like It Too*. All that they are alleged to have done (and all that they have done) is to **publicly perform** portions of *You'll Like It Too* as embodied in *I Know You Got Soul*. Any such public performance was licensed under the terms of their blanket licenses with BMI. Accordingly, no infringement has taken place as a matter of law and USOP cannot be liable for any income it may have received from BMI as the result of such noninfringing public performances.[9]

## Conclusion

For the foregoing reasons, USOP respectfully requests that the Court grant this Motion; exclude from this action any claims arising from (1) activities by USOP prior to May 2002, (2) the foreign exploitation of *I Know You Got Soul*, (3) the licensing of portions of *I Know You Got Soul* for use in other musical compositions, and (4) the public performance of *I Know You Got Soul* under license from BMI; and limit Bridgeport's claims, at most, to income received by USOP from the exploitation of recordings containing *I Know You Got Soul* within the United States between May 2002 and May 2005.

---

[9] Bridgeport may argue that the BMI blanket licenses do not cover the public performance of *You'll Like It Too* as allegedly embodied in *I Know You Got Soul* because Bridgeport was not paid by BMI for such public performances. This contention was addressed – and expressly rejected – in Freeplay. 404 F. Supp. 2d at 554. As Freeplay makes clear, any issue of non-payment in connection with public performances of *I Know You Got Soul* is between BMI and Bridgeport, and does not affect the scope or grant of rights between BMI and any third party that has publicly performed *I Know You Got Soul*.

Date: July 17, 2006                    Submitted by:


                            /s/ Russell J. Frackman
                            Russell J. Frackman
                            MITCHELL SILBERBERG & KNUPP, LLP
                            11377 West Olympic Boulevard
                            Los Angeles, California 90064-1683
                            (310) 312-2000 (Telephone)
                            (310) 312-3100 (Facsimile)

                            Philip M. Kirkpatrick
                            STEWART, ESTES & DONNELL, PLC
                            Financial Center, 14th Floor
                            424 Church Street
                            Nashville, Tennessee 37219
                            (615) 244-6538 (Telephone)
                            (615) 256-8386 (Facsimile)
                            *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

       The undersigned does hereby certify that a true and exact copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was served upon Plaintiffs, via the Court's electronic filing system, to the following address:

Richard S. Busch
Ramona DeSalvo
KING & BALLOW
1100 Union Street Plaza
315 Union Street
Nashville, Tennessee 37201


on the 17th day of July, 2006.

                            By:   /s/ Philip M. Kirkpatrick
                                    Philip M. Kirkpatrick