UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIDGEPORT MUSIC, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT HILL MUSIC, *et al* <br><br> Defendants. | No. 3:05-0377 <br><br> Jury Demand <br> Judge Campbell <br> Magistrate Judge Brown |

**MEMORANDUM OF DEFENDANTS UMG RECORDINGS, INC. AND UNIVERSAL-SONGS OF POLYGRAM INTERNATIONAL, INC. IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO DOCUMENT REQUEST NOS. 10 AND 11**

Defendants UMG Recordings, Inc. ("UMG") and Universal-Songs of PolyGram International, Inc. ("USOP") (collectively, "Universal") hereby brings this motion to compel the production of two categories of documents requested by Universal and unjustifiably withheld by plaintiff Bridgeport Music, Inc.: (1) documents reflecting licenses entered into by Bridgeport or its predecessors for the use of portions of *You'll Like It Too* as a sample in works other than *I Know You Got Soul*, and (2) documents reflecting income received by Bridgeport in connection with any licenses (whether or not issued by Bridgeport) in connection with the use of *You'll Like It Too* as a sample in works other than *I Know You Got Soul*.

Bridgeport initially refused to produce ***any*** of these documents, claiming that the information contained therein "neither is relevant nor calculated to the discovery of admissible evidence." See Response to Document Request Nos. 10 and 11 [Declaration of Marc E. Mayer ("Mayer Decl."), Ex. 2]. This contention is baseless, because there can be little dispute that the documents are directly relevant to Bridgeport's damages claims – namely, Bridgeport's claim that it is entitled to "actual damages" in the amount of the "reasonable market value" of a license for the use of *You'll Like It Too* in *I Know You Got Soul*. Apparently recognizing this,

Bridgeport then claimed that it has never issued a license authorizing the use of *You'll Like It Too* as a sample in any work. However, Bridgeport has never claimed that it did not receive any income in connection with samples authorized prior to its acquisition of rights in *You'll Like It Too*. Nor has Bridgeport claimed that it does not possess documents reflecting the existence of licenses issued by its predecessors (the former owners or administrators of *You'll Like It Too*.) In any event, Bridgeport has refused to supplement its discovery responses to attest to the purported non-existence of responsive documents. Finally, when Universal attempted to hold a discovery conference on this issue or prepare a joint written statement, Bridgeport's counsel advised that they were unavailable and did not provide alternative dates. Additionally, they have ~~made itself unavailable and, indeed,~~ refused to even provide Universal with ~~its~~ Bridgeport's portion of the joint written statement.

There was no reason for Bridgeport to refuse to provide these discoverable, highly relevant documents. If no~~t~~ such documents exist, there was no reason for Bridgeport to refuse to so state ~~under oath or in a verified supplemental response~~in writing in a supplemental response. There certainly was no excuse for Bridgeport to completely refuse to cooperate in the resolution of this discovery dispute or the preparation of this motion to compel. Accordingly, the Court should grant Universal's motion and order Bridgeport to immediately provide ***all*** documents responsive to the two requests.

## I. STATEMENT OF BACKGROUND FACTS.

This is a copyright infringement action involving the alleged use of a portion of the musical composition *You'll Like It Too* (specifically, a portion of drums) in the musical composition and sound recording *I Know You Got Soul*. Bridgeport claims to be the owner of *You'll Like It Too*. USOP is a music publisher and a co-owner of the musical composition *I Know You Got Soul*. UMG is a record company that has released various albums containing a sound recording of *I Know You Got Soul*.

Bridgeport has made clear – both in this action and in a related action entitled <u>Bridgeport Music, Inc. v. Crited Music</u>, 3:01-0916 (also involving the alleged use of *You'll Like It Too* in *I*

*Know You Got Soul*) -- that it intends to seek various categories of damages under Section 504 of the Copyright Act, including (1) statutory damages, (2) USOP and UMG's net profits attributable to the alleged infringement, and (3) actual damages, including the reasonable market value of a license for the allegedly infringing use (which Bridgeport has characterized as its "lost licensing opportunities" from the infringement.) Mayer Decl., Exs. 3 & 4. Universal intends to prove, for its part, that any net profits it received are not attributable to the infringement, and that the reasonable value of a license is far less than Bridgeport claims via the testimony of its administrator, Jane Peterer.

In order to address Bridgeport's "lost licensing opportunities" claim, on January 17, 2006, Universal served its first set of Document Requests on Bridgeport. Mayer Decl., Ex. 1. Document Request Nos. 10 and 11 sought the following:

> 10. All DOCUMENTS that constitute, embody, reflect or refer to any licenses issued by BRIDGEPORT authorizing the use of any portion of *You'll Like It Too* as a sample or interpolation in any musical composition or sound recording other than *I Know You Got Soul*.
>
> 11. All DOCUMENTS that constitute, embody, reflect or refer to any income received by BRIDGEPORT in connection with the use of any portion of *You'll Like It Too* as a sample or interpolation in any musical composition or sound recording other than *I Know You Got Soul*.

Id. In the definitions accompanying the document requests, "BRIDGEPORT" was defined as Bridgeport Music, Inc. "and its REPRESENTATIVES," including its "employees, servants, representatives, and agents, ***and any of their predecessors or successors.***" Id.

On March 31, 2006, Bridgeport served its responses to the document requests. Bridgeport's response to both document requests was identical:

> "Plaintiff objects to this request on the ground that it is overly broad and seeks information that neither is relevant nor calculated to lead to the discovery of admissible evidence." Mayer Decl., Ex. 2.

During the course of discovery in this and other related actions, it became clear that Bridgeport intended to seek damages based on a "lost licensing opportunity" theory, and, indeed, on September 29, 2006, Bridgeport included in its exhibit list in another Bridgeport case, Case No. 3:01-0780, various licenses that it executed for the use of the work at issue in that case in other works. Mayer Decl., ¶ 4 & Exs. 3 & 4. Accordingly, on October 13, 2006, Universal sent

a letter to Bridgeport to request that Bridgeport provide any licenses authorizing the use of *You'll Like It Too* in *I Know You Got Soul*. Id., Ex. 5. Bridgeport did not promptly respond to Universal's letter, and thus on Monday, October 16, 2006, Universal sent to Bridgeport its portion of a joint written statement in support of a motion to compel and requested that Bridgeport forward its response by Friday, October 20, 2006. Id., ¶ 6 & Ex. 6.

On October 18, 2006, Bridgeport finally responded to the October 13 letter. In its October 18 letter, Bridgeport stated, unequivocally, that it would not produce the requested documents, since it believed that the documents were irrelevant and could be obtained from a third party to the lawsuit. Mayer Decl., ¶ 7, Ex. 7. Bridgeport also stated that because of conflicting obligations, it could not, and would not, provide its portion of the joint written statement by Friday, October 20. Id. Universal responded to Bridgeport's October 18 letter the same day, provided Bridgeport additional time (until Tuesday, October 24) to respond to the joint written statement, and scheduled a conference call with the Magistrate Judge for Monday, October 23, 2006. Id., Ex. 8. On Friday, October 20, Bridgeport wrote a letter to Universal standing on its objections, but stating that no response was necessary because Bridgeport had not issued any sample licenses for *You'll Like It Too*. Id., Ex. 9. However, Bridgeport refused to provide a supplemental discovery response, ~~refused to~~ advised that its counsel could not participate in the October 23, 2006, call with the Magistrate Judge, provided no alternative dates for doing so, and refused to provide its portion of the joint written statement by the Tuesday, October 24, 2006, deadline. Id., Ex. 10. Bridgeport did not, and would not, state that it had not received income in connection with sample licenses for *You'll Like It Too*. Bridgeport also did not state that it did not have within its possession, custody or control any licenses issued by its **predecessors** for the use of *You'll Like It Too* in *I Know You Got Soul*.

By Monday, October 30, 2006, Bridgeport still had not provided its portion of the joint written statement, and still had not agreed to provide a supplemental response to the discovery requests. Mayer Decl., ¶¶ 12-13.

II. **THE COURT SHOULD ORDER BRIDGEPORT TO PRODUCE LICENSES AND INCOME STATEMENTS PERTAINING TO ANY USES OF *YOU'LL LIKE IT TOO* AS A SAMPLE IN OTHER MUSICAL COMPOSITIONS AND SOUND RECORDINGS.**

Licenses authorizing the use of portions of *You'll Like It Too* (especially the portion at issue in this lawsuit) in musical compositions and sound recordings other than *I Know You Got Soul* – and, equally critically, any income received by Bridgeport from any sample licenses (whether or not issued by Bridgeport) – are directly relevant to Bridgeport's damages claims in this lawsuit. This is because Bridgeport is seeking in this action its ***actual damages*** resulting from its purported "lost licensing opportunities" as a result of the infringement. See Bridgeport's Response to USOP's Motion for Partial Summary Judgment (Docket No. 102) ("Response to USOP MSJ") at 14 ("Bridgeport's actual damages including its lost licensing opportunities are distinct from, and may be awarded in addition to, USOP's ill-gotten profits attributable to the infringement of 'You'll Like It Too.'"); Response to Interrogatory No. 19 (Mayer Decl., Ex. 3) ("Plaintiff states it has not been paid its due licensing fees for mechanical rights in the musical composition that it owns.")

It is well-established that in determining a plaintiffs' actual damages as a result of "lost licensing opportunities," the measure "what a willing buyer [i.e. Universal] would have been reasonably required to pay to a willing seller [i.e. Bridgeport] for plaintiffs' work." Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corporation, 562 F.2d 1157 (9th Cir. 1977). This measure of damages is an ***objective*** -- not a subjective – standard. See 2 P. Goldstein, Copyright §12.1.1, at 12:14 (2000). Bridgeport apparently agrees. See Response to USOP MSJ at 14 ("There are three issues as to lost revenues: (1) what revenue could the plaintiff reasonably anticipate, (2) was that revenue lost, and (3) was the loss caused by the infringement.") Thus, it is irrelevant what Bridgeport (subjectively) ***thought*** it could license the work for or hoped to receive in exchange for a license: the true measure of damages is the "fair market value" of a license for the allegedly infringing use. Davis v. The Gap, Inc., 246 F.3d 152 (2d Cir. 2001) (actual damages for use of plaintiff's eyewear in defendant's advertisement was the "fair market value" for a license for the alleged use).

Licenses issued by Bridgeport or its predecessors to third parties for other, analogous uses of the allegedly infringing work (*You'll Like It Too*) are directly relevant to (and, indeed, are the best, most objective evidence of) the "fair market value" of the allegedly infringing work. Those licenses will reflect what third parties ***actually paid*** for their comparable use of *You'll Like It Too*. Thus, only by reviewing those licenses can Universal accurately assess the reasonableness of Bridgeport's actual damages claims and the true, objective amount that should have been paid for the use. Likewise, evidence of the amount that Bridgeport received in connection with ***any*** sample licenses (whether or not such licenses were issued by Bridgeport) is directly relevant to determining the amount that Bridgeport could have expected to receive in connection with the use at issue here.[1] Indeed, whether such income was in connection with licenses ***not*** issued by Bridgeport (but by its predecessors) is especially relevant to its actual damages, because what a third party obtained for the use of *You'll Like It Too* is an objective measure of the work's value as a sample.

Bridgeport apparently intends to offer two justifications for failing to respond to the document requests.

***First***, Bridgeport apparently claims that because it does not consider its prior licensing activity in issuing sample licenses (but assesses such licenses on a case-by-case basis), such licenses are irrelevant. This misses the point. Because the measure of Bridgeport's actual damages is the objective "fair market value" of the work, it is immaterial what factors ***Bridgeport*** considers in licensing the work; the relevant consideration is what the overall value of the work is in the marketplace ***as a whole***. Just as real properly valuations rely on review of "comparable sales" in the relevant marketplace, it appropriate (and, indeed, necessary) to consider comparable licenses for *You'll Like It Too* to assess the fair market value for the use at issue here. Further, even if done on the subconscious level, Bridgeport certainly considers the its prior licensing activity in assessing what it could reasonably command for any particular use. That those

---

[1] Bridgeport's claim that the requests are "overly broad" is incorrect. The requests merely seek licenses issued by Bridgeport for ***one specific work***. It is unlikely that an excessive number of licenses exist or that those licenses would be difficult to locate and produce.

considerations fall under the broad rubric of its "experience" does not change the fact that part of that "experience" is Bridgeport's prior licensing activity, and that such licensing activity is relevant to its claims here.

*Second*, Bridgeport claims that it need not respond to the document requests because Bridgeport *itself* has never issued any licenses for the use of *You'll Like It Too* as a sample in any other work. As a threshold matter, Bridgeport's argument ignores that the document request *also* encompasses licenses issued by its predecessors. Bridgeport has never claimed that no such documents exist. Further, even if no sample licenses exist for the use of *You'll Like It Too*, Bridgeport specifically has *not* claimed that it has not received income in connection with licenses issued by third parties or co-owners of *You'll Like It Too* that predate its interest in *You'll Like It Too*. Universal is entitled to documents reflecting that income. Finally, if in fact no responsive documents exist, then Bridgeport must so state in writing, in a supplemental response or other verified statement. Bridgeport has never explained its refusal to supplement its discovery responses.

## CONCLUSION

For the foregoing reasons, Universal respectfully requests that the Court grant its motion to compel and order Bridgeport to produce all documents responsive to Request Nos. 10 and 11.

Date: October 3031st, 2006         Submitted by:

/s/ Russell J. Frackman
Russell J. Frackman
MITCHELL SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)

Philip M. Kirkpatrick
STEWART, ESTES & DONNELL, PLC
Fifth Third Center, 14th Floor

424 Church Street
Nashville, Tennessee 37219
(615) 244-6538 (Telephone)
(615) 256-8386 (Facsimile)

*Attorneys for Defendants Universal-Songs of PolyGram International Publishing, Inc. and UMG Recordings, Inc.*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and exact copy of the foregoing was served upon Plaintiffs, via the Court's e-filing system, to the following address:

Richard S. Busch
Ramona DeSalvo
KING & BALLOW
1100 Union Street Plaza
315 Union Street
Nashville, Tennessee 37201


on the ~~30th~~ 31st day of October 2006.

By: <u>s/Philip M. Kirkpatrick</u>
Philip M. Kirkpatrick