UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **Bridgeport Music Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | NO. 3:05-0377 |
| vs. ) | Judge Campbell/Brown |
| ) | |
| **Robert Hill Music, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

Presently pending before the Magistrate Judge is Defendant UMG Recordings, Inc.'s ("UMG") Motion for Partial Summary Judgment (Docket Entry No. 63). This motion has been referred to the undersigned for a Report and Recommendation (Docket Entry No. 78).

There are two arguments presented in UMG's Motion for Partial Summary Judgment. The first contends that UMG is entitled to summary judgment relating to the product "Paid In Full (Expanded Edition) because they are a sublicensee of Unichappell and thus a beneficiary of the Warner Settlement Agreement in which the Plaintiffs released Unichappell and all of its sublicensees.[1] The second advances that Plaintiff's claims, under 17 U.S.C. § 507(b), must be limited to a three year period prior to filing, specifically from May 12, 2002 to May 12, 2005.

Further pending before the District Judge is UMG's Motion to Enforce the Parties'

---

[1]A copy of the relevant portion of this settlement agreement is filed under seal (Docket Entry 68) as Exhibit 1 to the declaration of Marc E. Mayer.

1

Settlement Agreement to Dismiss Claims On Seven Products at Issue ("Motion to Enforce") (Docket Entry 97)[2]. If the District Judge grants this Motion to Enforce, as the Magistrate Judge has recently recommended, then UMG's first argument in the instant motion dealing with the sublicensee issue will be moot, as the product "Paid In Full (Expanded Edition)," sought to be summarily dismissed is contained in that settlement agreement. Further, with respect to UMG's second argument, any statute of limitation issue regarding "Paid in Full (Deluxe Edition)," will also be moot, as this product is also contained in that settlement agreement. However, the second argument would be relevant to any remaining products in this action.

If the District Judge does not grant the Motion to Enforce, the Magistrate Judge for the reasons stated below, **recommends** that Defendant UMG's Motion for Partial Summary Judgment (Docket Entry 63) be **DENIED** in part and **GRANTED** in part. Specifically, the Magistrate Judge **recommends** that UMG's first argument regarding the sublicensee issue be **denied**, inasmuch as it appears that there are sufficient factual disputes to render summary judgment inappropriate. With regard to UMG's second argument, the Magistrate Judge **recommends** that UMG's motion for summary judgment be **granted** for any claims accruing prior to May 12, 2002.

## II.     BACKGROUND

---

[2]In his Report and Recommendation (Docket Entry 173) on the Motion to Enforce, the Magistrate Judge found that UMG inadvertently excluded the product "Paid in Full (Deluxe Edition)" from it's Motion to Enforce. The Magistrate Judge included this product in the list of recommended dismissed items as it is clearly in all versions of the accepted and proposed stipulations which were discussed at length. As such, there are eight products at issue in the Motion to Enforce: (1) "The 18th Letter: The Book of Life;" (2) Paid in Full;" (3) "20th Century Masters-The Millennium Collection: The Best of Eric B. & Rakim;" (4) "Grand Theft Auto: San Andreas (Original Soundtrack);" (5) Paid in Full (Original Soundtrack); *(6) "Paid In Full (Deluxe Edition);*" (7) "*Paid In Full (Expanded Edition)*" and (8) the video game "Grand Theft Auto: San Andreas." (Docket Entry 99, Exhibit 19, Page 4; Docket Entry 99, Exhibit 21, Page 3).

This is another of the myriad of cases growing out of the original massive filing by Bridgeport against a large number of defendants involved in one way or the other in the music industry, in the original case of 3:01-0412. That case was subsequently severed into a number of smaller cases and litigation in those cases has proceeded unabated to date.

In May 2003, Bridgeport and its related companies entered into a settlement agreement with AOL Time Warner ("Warner Settlement Agreement") in which Bridgeport's claims against the Warner parties were settled. (Docket Entry 100, Exhibit 1, Excerpts of Warner Settlement Agreement). Among the released Warner parties was Unichappell Music, Inc. ("Unichappell"). In addition to the named parties already identified in specific actions, Bridgeport agreed to release, among others, "licensees" of the Warner parties. (Docket Entry 100, Exhibit 1).[3] It is under this Warner Settlement Agreement that UMG claims in the instant motion that it is entitled to release in as a sublicensee of Unichappell with regard to the album "Paid In Full (Expanded Edition)."

This particular case had its beginnings in <u>Bridgeport v. Crited Music, Inc. *et al*</u>, No. 3:01-0916. On January 11, 2005, the Plaintiff attempted to amend that complaint to add new claims (3:01-0916, Docket Entry 82), however, that attempt was denied (3:01-0916, Docket Entry 83).[4] Subsequently, four months later, Bridgeport filed the present case on May 12, 2005 (Docket Entry 1). The Complaint alleges that Bridgeport had interests in the musical composition "You'll Like It

---

[3]The settlement agreement states, ... "the term 'licensees' shall include all entities regardless of whether they are a named defendant in any of the Actions, whose rights to exploit any AOL Time Warner composition and/or sound recording or portion thereof, originate from an express or implied license granted, directly or through an intermediary, by any AOL Time Warner Party." (Docket Entry 100 ¶ 2c ).

[4]As a basis for the denial, the Court stated that it was time to bring the 2001 case to a conclusion and not add a new claim at this late date. The Plaintiffs were directed to file a new lawsuit and pay the filing fee. (3:01-0916, Docket Entry 83).

Too" and that this song was improperly sampled in a new musical composition and sound recording "I Know You Got Soul" (Docket Entry 1). Plaintiffs allege in their Complaint that the various Defendant entities, including UMG, manufactured, distributed, marketed, and/or sold various renditions of "You Know You Got Soul" containing samples of their work "You'll Like It Too" (Docket Entry 1).

It appears that in late 2005, settlement discussions began between Bridgeport and UMG (Docket Entry 18). From December 2005 through July 2006, the parties discussed the terms of a partial settlement agreement, trading emails and correspondence addressing which albums would be dismissed and for what reasons, i.e. whether UMG was a licensee of Unichappell under the Warner Settlement Agreement. "Paid In Full (Expanded Edition), the album which is the subject of UMG's first argument in the instant motion, was included in these settlement discussions.

During the course of these settlement discussions, Bridgeport raised a concern as to whether UMG was in fact a licensee of Unichappell and thus a beneficiary of the Warner settlement agreement entitled to release. Specifically, Bridgeport was concerned with whether Warner, meaning Unichappell, was a co-publisher of "I Know You Got Soul" giving it right to license the composition or a 25% income participant only. In a March 1, 2006, email, Bridgeport stated: "I don't believe we have any clear information from you that Warner is a 'co-publisher.' All of the information we have been provided to date does not actually say that. It seems to indicate that Warner is an income participant only. . . We need evidence of the licenses whether that be the license itself or an affidavit of the licensor attesting to the fact that there is a license. . ." (Docket Entry 99, Exhibit 6).

From April to July 2006, UMG provided copies of the licenses issued to UMG from

4

Unichappell via it's mechanical licensing agent the Harry Fox Agency to Bridgeport as requested. (Docket Entry 99, Exhibits 8 and 11, Docket Entry 147, ¶ 4, Exhibit C and Exhibit D, Pages 6-9).

On July 5, 2006, Warner's counsel in the Bridgeport actions, Amy Everhart, in response to Bridgeport's inquiries regarding Unichappell's status, sent a letter to Bridgeport suggesting that Bridgeport "withdraw any pending claims" stating that Unichappell, as co-publisher of "I Know You Got Soul," had issued licenses to UMG for a number of specified albums at issue.[5] (Docket Entry 99, Exhibit 12). This letter did not state that Unichappell had issued a license to UMG for the album at issue, "Paid In Full (Expanded Edition)." However, it did state that, "It is possible that additional mechanical licenses have been issued, and we are in the process of investigating the existence of such additional licenses." (Docket Entry 99, Exhibit 12, Page 2).

On July 12, 2006, UMG sent a confirmation letter to Bridgeport stating that it was "attaching documents reflecting the existence of a license for the album "Paid In Full (Expanded Edition)." (Docket Entry 149, Exhibit D, Pages 2-4).

In response to UMG's July 12, 2006, correspondence directly above, on July 14, 2006, Bridgeport wrote the following [irrelevant parts omitted and emphasis added]:

> *We have reviewed the license information*, some of which you provided as recently as July 11, as well as the proposed stipulation for our review. *We agree not to pursue infringement claims with respect to the sound recordings of "I Know You Got Soul" on the albums:*
>
> "The 18th Letter-Book of Life," "Paid in Full," "20th Century Masters-The Millennium Collections: The Best of Eric B. & Rakim," "Grand Theft Auto (Original Soundtrack),"

---

[5] Warner counsel stated that Unichappell issued to UMG (either itself or via the Harry Fox Agency) licenses for "The Book of Life;" "Gunmen (Original Motion Picture Soundtrack);" "Paid in Full;" "The Best of Eric B. & Rakim: 20th Century Masters;" and "Grand Theft Auto: San Andreas." Warner counsel did not provide the licenses with this correspondence.

5

"*Paid in Full (Expanded Edition),*" "Paid in Full (Original Soundtrack)."[6]

We have another "Paid in Full (Expanded Edition)" with a different product number released on Island for which you have not produced a license that I can see[7]...Also, I do not see a license for the sound recording in the video game. Maybe you could point that out to me as well.

We also await the supplemental documentation from Unichappell for which you said you would obtain permission from Amy Everhart to release to us . . .

*Richard indicated that he believed this would be a sufficient representation to your client of the claims we are not pursuing.* The stipulation as drawn is too broad. We still have the digital download issues on these matters because the licenses referenced above are for the CD, LP or CS configurations indicated. Also, if you could let me have the answers on the few remaining issues, we may be able to finalize those as well. (Docket Entry 147, Exhibit E, Pages 1 and 2).

From July 16, 2006 to July 26, 2006, additional communications on outstanding issues were exchanged and stipulation language and format proposed. (Docket Entry 99, Exhibits 15, 16, 17, 18; Docket Entry 147, Exhibit F and G ). During this time, specifically on July 17, 2006, which was the deadline date for dispositive motions, Defendant UMG filed the instant Motion for Partial

---

[6] The CD product numbers listed in this letter are omitted.

[7] Bridgeport has argued that there are two infringing songs/versions of "I Know You Got Soul" on the "Paid In Full (Expanded Edition)" product. Bridgeport argues that UMG did not provide licenses for both songs on this album and therefore, this product should not be included in the stipulation, if it is enforced. UMG denies this stating that they provided the license from the Harry Fox Agency for the entire "Paid In Full (Expanded Edition)" album (Docket Entry 149, Exhibit D) and that Bridgeport subsequently agreed to dismiss this entire album, along with the other seven products. (Docket Entry 99, Exhibit 19). The Magistrate Judge believes that the issue of whether or not there are two separate compositions on the product "Paid In Full (Expanded Edition)" is irrelevant as Bridgeport agreed to dismiss the entire album on both July 14, 2006 (Docket Entry 147, Exhibit E) and on July 27, 2006 (Docket Entry 99, Exhibit 19). However, if the District Judge does not grant the Motion to Enforce, the Magistrate Judge still believes that this issue is irrelevant so long as UMG provided a copy of the license from Unichappell for the entire album "Paid In Full (Expanded Edition)." Further, the declaration of JoAn Cho, the Director of Business and Legal Affairs for UMG, states that the album "Paid in Full (Expanded Edition) has been assigned two codes for the same album, a UPC Code number 00602498804223 as well as a UMG selection number of B000432302. (Docket Entry 69).

Summary Judgment (Docket Entry 63), a supporting memorandum (Docket Entry 64), statements of material facts (Docket Entry 65 and 66), as well as the declarations of Marc E. Mayer (Docket Entry 67 and 68) and JoAn Cho (Docket Entry 69). In response, Plaintiffs have filed a memorandum in opposition (Docket Entry 118), responses to UMG's statements of material facts (Docket Entry 113, 117), a statement of additional facts (Docket Entry 116), and the declarations of Jane Peterer (Docket Entry 126) and Ramona DeSalvo (Docket Entry 128). Further, both Plaintiffs and UMG have filed supplemental memorandums regarding the statute of limitations issue. (Docket Entry 169 and Docket Entry 172).[8]

On July 27, 2006, UMG submitted, via email, a proposed stipulation to Bridgeport. (Docket Entry 99, Exhibit 19; Docket Entry 147, Exhibit H). This proposed stipulation is limited to the dismissal of eight products, including the album in the instant motion, "Paid in Full (Expanded Edition)."[9] Bridgeport replied to this email and proposed stipulation that same date stating, "This stipulation is fine." (Docket Entry 99, Exhibit 19 and Docket Entry 147, Exhibit H). Approximately five minutes after sending this email to UMG, Bridgeport sent an additional email stating that, "You will also need to withdraw your motion on these issues because I don't want to have to answer anything on these albums we are stipulating to-it should probably be in the stipulation now that I think about it." (Docket Entry 147, Exhibit H, Page 2).

---

[8]Given the large number of filings and the confusion surrounding the ECF system, one or two docket entries may have been inadvertently left out of this list. However, all of the parties' substantial filings regarding this matter were considered by the Magistrate Judge.

[9]As previously stated in footnote 2, UMG inadvertently excluded the product "Paid In Full (Deluxe Edition)" from it's Motion to Enforce. The Magistrate Judge includes this product in the list of recommended dismissed items as it is clearly in all versions of the accepted and proposed stipulations. (Docket Entry 99, Exhibit 19, Page 4; Docket Entry 99, Exhibit 21, Page 3). As such, there are eight products at issue. For a complete listing, see footnote 2.

From July 28, 2006, to August 17, 2006, additional proposed stipulations adding in language on the statute of limitations issues as well as digital downloading were exchanged between the parties. Both parties submitted proposals containing identical language regarding the dismissal of the eight products at issue and appear to have also agreed on the statute of limitations issue. (Docket Entry 99, Exhibit 20, 21, and 22; Docket Entry 147, Exhibit I and J). However, on August 17, 2006, Bridgeport submitted a revised stipulation to UMG, this time including a third paragraph regarding digital downloads. (Docket Entry 99, Exhibit 21). UMG responded stating that it "cannot agree to the third paragraph regarding digital downloads...For the sake of getting this filed, I am prepared to agree to the deletion of that paragraph without a waiver of our respective positions." (Docket Entry 99, Exhibit 22). After this date, there is no response from Bridgeport and UMG did not pursue this matter further until over one month later.

On September 20, 2006, UMG sent Bridgeport an email stating,

"I raised an issue with the third paragraph and you never responded. If you are no longer willing to execute this stipulation (or a variant thereof), I need to know right away. If you are in agreement on the stipulation, the let's get this done and we can agree to withdraw the UMG motion for summary judgment. If you are backing off from your agreement to execute this stipulation, then, as I mentioned, we will raise the issue with Judge Brown and seek to enforce our prior agreement." (Docket Entry 147, Exhibit N).

Bridgeport replied that same date stating:

"The stipulation is not okay to file. Indeed that stipulation that was sent with that email was not finally approved by either of us. We will need to complete further discovery. If the facts represented to us are true, i.e. that Unichappell was authorized to issue a license in the first instance, then the license was properly issued and UMG would be a licensee under the Warner settlement agreement. Typically when a party issues a license, they have a right to do so. Since Unichappell is not an owner, its rights would be contractual. You have produced no contract granting Unichappell any rights. The only right they have as far as we can tell from discovery to date, including the discovery in case 916, is income participation only, that is to collect, account to and pay their own writers, because they administer the sampled James Brown song "I Know You Got Soul." (Docket Entry 147, Exhibit N).

8

On October 3, 2006, Bridgeport conducted the deposition of Robert Allen, the Vice President of Business Affairs for the Universal Music Publishing Group.[10] Mr. Allen testified that Unichappell has a 25% income participation interest in "I Know You Got Soul (rap version)" and, more importantly, does *not* have the right to license the composition "I Know You Got Soul (rap version)." (Docket Entry 149, Exhibit M, Page 6).

## III. LEGAL DISCUSSION

### A. Standard of Review

The Magistrate Judge has applied the well-established standard for determining summary judgment motions. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56©. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. The Higbee Company*, 256 F.3d 416, 419 (6th Cir. 2001).

In this connection, it must be noted that the nonmovant must present sufficient admissible

---

[10]Universal Music Publishing Group is a fictitious "umbrella" name for a group of affiliated companies engaged in the business of music publishing, including Universal-Songs of Polygram International, Inc. ("USOP"), who are in the business of acquiring, licensing, owning, administrating and exploiting copyrights in musical compositions. (Docket Entry 58 and Docket Entry 87). It is undisputed that USOP is a partial owner of the copyright in "I Know You Got Soul."

9

evidence on a material issue to qualify his case to go to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, while the nonmoving party may produce some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the nonmoving party.

**B.     Defendant UMG's Motion For Partial Summary Judgment**

UMG's Motion for Partial Summary Judgement asserts two issues. (Docket Entry 63) The first argument is limited to one product, "Paid in Full (Expanded Edition)." UMG argues that claims related to "Paid in Full (Expanded Edition)" should be dismissed as UMG is a sublicensee of Unichappell and, pursuant to the Warner Settlement Agreement, Bridgeport released all sublicensees of Unichappell. UMG's second argument is that on any remaining products, given 17 U.S.C. § 507(b), Bridgeport should only be able to collect damages for infringing acts that occurred within three years prior to the filing date in this action.

**1.     Whether UMG is a sublicensee of Unichappell with regards to "I Know You Got Soul" on the product "Paid In Full (Expanded Edition)"**

If the District Judge grants UMG's Motion to Enforce, as the Magistrate Judge has recently recommended, then UMG's first argument will be moot, as the product "Paid In Full (Expanded Edition)," sought to be summarily dismissed is contained in that settlement agreement.

UMG argues that Unichappell issued a license through it's mechanical licensing agent, the Harry Fox Agency, authorizing UMG's use of "I Know You Got Soul" on the album "Paid in Full (Expanded Edition). (Docket Entry 69, Exhibit 1)[11] UMG relies on a copy of this license and the

---

[11]A copy of the license provided by UMG. The license lists Unichappell Music in the Income Participant (s) section B.

declaration of JoAn Cho, the Director of Business and Legal Affairs for UMG, to establish that they are in fact a Unichappell sublicensee entitled to release under the Warner Settlement Agreement. Ms. Cho states that: (1) the April 2005 release of "Paid in Full (Expanded Edition)" was assigned two separate numbers, a UPC code and a UMG Selection code, both of which refer to the exact same album; (2) only one version of the recording entitled "I Know You Got Soul" appears on the album "Paid In Full (Expanded Edition); and (3) that attached to her declaration is a true and correct copy of the mechanical license issued by the Harry Fox Agency on behalf of music publisher Unichappell Music, Inc., authorizing the use of the musical composition "I Know You Got Soul" in the April 2005 release of an album entitled "Paid In Full." (Docket Entry 69).

On the other hand, Bridgeport asserts that Unichappell is not even authorized to issues licenses for "I Know You Got Soul" because it is not a copyright holder, but rather, an income participant only with no copyright holder rights, including the right to license, transferred in writing. (Docket Entry 118, Page 11-12). Bridgeport supports this argument citing the deposition transcript of Robert Allen. In his October 3, 2006, deposition, Mr. Allen stated that Unichappell has a 25% income participation interest in "I Know You Got Soul (rap version)" and, more importantly, does *not* have the right to license the composition "I Know You Got Soul (rap version)."[12] (Docket Entry 149, Exhibit M, Page 6). Bridgeport also cites the declaration of Kelly Isenberg, the Director of Legal and Business Affairs for Warner/Chappell Music,[13] which states that after "a reasonable search of Unichappell's records for agreements conferring rights upon Unichappell or its

---

[12]Mr. Allen is affiliated with USOP, an undisputed co-owner of the composition "I Know You Got Soul."

[13]Unichappell is a subsidiary of Warner/Chappell. (Docket Entry 108, Exhibit G, ¶ 1).

11

predecessors an interest in and to the musical composition "I Know You Got Soul (rap version)," she "could locate no such agreements." (Docket Entry 108, Exhibit G). Additionally, Bridgeport cites the declaration of Jane Peterer which states that based on her 48 years of experience in the music publishing and recording industry and her review of the documents in the related Crited action, Unichappell is an income participant only and is not a authorized to enter into any licenses with third parties to grant any rights to exploit "I Know You Got Soul" in any manner absent a written transfer of rights from the copyright owner. (Docket Entry 126).

On November 2, 2006, the parties appeared before the Magistrate Judge regarding this motion, among others. The parties clearly disagree as to what are the definitions, functions, and rights of a publisher, administrator and income participant. Further, there are conflicting statements between several material persons regarding whether Unichappell is authorized to issue licenses for "I Know You Got Soul." Mr. Allen, who is affiliated with USOP, one of the undisputed owners of the copyright for "I Know You Got Soul," states that Unichappell has no right to license the composition. (Docket Entry 149, Exhibit M, Page 6). On the other hand, UMG submits a copy of the license issued as well as Ms. Cho's statement that this license was issued by the Harry Fox Agency on behalf of music publisher Unichappell Music, Inc., authorizing the use of the musical composition "I Know You Got Soul" in the April 2005 release of an album entitled "Paid In Full. (Docket Entry 69). The Magistrate Judge is concerned with the license provided by UMG as it lists Unichappell as an income participant.

As such, there are clearly sufficient factual disputes to render summary judgment for UMG inappropriate. Whether Unichappell is authorized to issue licenses and whether these licenses were then issued to UMG is a matter for trial.

**2.     Whether Plaintiff's claims must be limited to a three year period prior to filing**

17 U.S.C. § 507(b) Copyright Infringement and Remedies, Limitations on Actions, states that, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." The main argument between the parties on this issue is when the claim "accrued." Both parties agree that a cause of action under the Copyright Act "accrues" when a plaintiff knows of the copyright infringement or is chargeable with such knowledge. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). See also *Merchant v. Levy*, 92 F.3d 51, 56-57 ( 2nd Cir. 1996).

UMG contends that the definitive date in most cases, including the instant case, is the date the action was filed, i.e. May 12, 2005. (Docket Entry 64, Page 5-6). Thus, UMG suggests that Bridgeport's claims be limited to a time period beginning three years prior, i.e. May 12, 2002. (Docket Entry 64, Page 6).

On the other hand, Bridgeport argues first that had it been allowed, on January 11, 2005, to amend it's complaint in the Crited Action, 3:01-0916, the amendment would have related back to the original filing date of that action, i.e. May 4, 2001, arguing that the proposed amendment arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original proceeding. Fed. R. Civ. P. 15(c)(2) (Docket Entry 118, Page 16). Therefore, Bridgeport suggests that May 4, 1998, three years prior to the original filing date in 3:01-0916, is the appropriate date. (Docket Entry 118, Page 6). Secondly, Bridgeport argues that the Court should toll the statute of limitations because it did not discover until approximately 2004 that certain albums were released in 2001. Bridgeport cites *Polar Bear Productions, Inc. v. Timex Corp.*, which states that the plaintiff's recovery is not barred by the statute of limitations when the plaintiff was unaware

13

of the infringement and that lack of knowledge is reasonable under the circumstances. 384 F.3d 700 (9th Cir. 2004).

The Magistrate Judge rejects both Bridgeport's arguments and believes that UMG is entitled to summary judgment on all claims arising more than three (3) years prior to the filing of this lawsuit, i.e. May 12, 2002. The parties do agree that the statute of limitations is three (3) years. However, the parties differ as to what the starting date should be. Clearly, the most definitive date is the date of the filing of this litigation. The Sixth Circuit is very clear that in copyright infringement cases, the three year statute of limitations in Section 507 bars recovery of any claims based on damages accruing more than three years before the complaint was filed. *Hoste v. Radio Corp. of America*, 654 F.2d 11 (6th Cir. 1981). Because each act of copyright infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004).

Bridgeport's recourse in response to the denial of it's motion to amend in the Crited Action, 3:01-0916, was to immediately file the present action. Instead, it took Bridgeport approximately four months after the denial to file the present complaint. This demonstrates that Bridgeport was not prepared to bring the present action when it originally filed it's motion to amend. Further, while Bridgeport argues at length about the discretion of the Court to amend, it does not cite any authority which unequivocally demonstrates that had it been permitted to amend the Crited Action to include the present claims that this amendment would have related back to the original filing date. Further, Bridgeport argues that the stay in discovery in the Crited Action prevented them from discovering further infringements. The Magistrate Judge notes that had the original case never been filed,

14

Bridgeport would still have a duty to police its copyrighted material without the benefit of discovery. There was notice of an infringement back in 2001, so therefore, Bridgeport should have conducted the necessary, complete investigation to determine exactly which products contained the known alleged infringing work at and after that time. Therefore, Bridgeport's first argument fails.

As to Bridgeport's second argument, which was raised for the first time at oral arguments on November 2, 2006, Bridgeport cites no controlling authority from the Sixth Circuit that deviates from it's prevailing view that the statute of limitations period is three years prior to the filing of suit. *Hoste v. Radio Corp. of America*, 654 F.2d at 11. Instead, Bridgeport cites the Ninth Circuit's *Polar Bear Productions, Inc. v. Timex Corp.,* to support it's proposition that it's recovery is not barred by the statute of limitations because it was reasonably unaware of portions of infringement. 384 F.3d 700 (9th Cir. 2004). However, perhaps because of the lateness of this argument, there is insufficient evidence in the record to support their assertion that they were not aware of a portion of the infringements until 2004. The citations given by Bridgeport do little to advance it's claim that it was reasonably unaware of a portion of the infringements until 2004.. Ms. Peterer's declaration states that Bridgeport, while unable to obtain copies of all the albums themselves containing "I Know You Got Soul," did have a list of albums containing "I Know You Got Soul" which she found on the site allmusic.com. (Docket Entry 126). Further, Ms. DeSalvo's declaration is even less helpful as it merely states that she conducted substantial research of the proper parties involved, which were difficult to ascertain. (Docket Entry 128). There is nothing in the record which states that Bridgeport was unaware of a portion of the alleged infringing albums until 2004. There is nothing the record which identifies which specific albums Bridgeport was unaware of until 2004.

15

In *Polar Bear*, the Ninth Circuit addressed the issue of whether damages that occurred more than three years prior to the filing of a copyright infringement suit could be recovered. *Id.* The court held that it was possible to obtain such damages "so long as the copyright owner did not discover–and reasonably could not have discovered–the infringement before the commencement of the three-year limitation period." *Id.* The Ninth Circuit concluded on this matter stating that "because Polar Bear did not discover Timex's infringement within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside the three-year window." *Id.*

Even setting aside that this case is not controlling and contradicts *Hoste*, the facts in the instant matter are clearly distinguishable from those in *Polar Bear*. In *Polar Bear*, Timex agreed to sponsor Polar Bear's production of an extreme kayaking film. In return, Timex received an exclusive one-year license to use the film in it's promotional items. After this one year period expired, Timex continued to use images from the film in its promotional material used at trade shows for a period of at least 5 years. Polar Bear did not learn of *any* infringement of it's product until one of the producers of the film saw Timex's infringing promotional material at a trade show. When Polar discovered this infringement, it was well beyond the limitations period. *Id.*

However, in the present case, there can be no dispute that Bridgeport had notice that the composition "You Like It Too" was allegedly being infringed by the composition "I Know You Got Soul" prior to the limitations period, i.e. May 12, 2002. In it's Complaint in the Crited Action, 3:01-0916, *filed in 2001*, Bridgeport specifically alleged that UMG and USOP had infringed its copyright in "You'll Like It Too" in the composition "I Know You Got Soul."

Upon it's discovery the alleged infringement in 2001, Bridgeport should have exercised reasonable diligence to discover all products, then existing and those released after filing, containing

16

this alleged infringement. Bridgeport clearly discovered the operative facts that served as the basis of it's copyright infringement cause of action prior to the limitations period. *Kepner-Tregoe, Inc. v. Executive Development, Inc.*, 79 F.Supp.2d 474, 488 (D.N.J. 1999) citing *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1339 (Fed. Cir. 1998)("upon discovering one infringing work, plaintiff had a duty to monitor the defendant's additional published works because "[a] reasonable [copyright holder], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor.") A copyright owner has an affirmative duty to police all distributions of his work in order to preserve a legal monopoly. Id.

Further, equitable tolling of the statute of limitations is considered on a "case-by-case basis" and should be used sparingly *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Moreover, to preserve the usefulness of statutes of limitations as rules of law, the Supreme Court has held that equitable tolling should be invoked only sparingly and should not be used to rescue a litigant from his own lack of diligence. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Bridgeport had sufficient knowledge of the parties and compositions involved to investigate all claims during the limitations period and therefore, tolling of the statute in the instant matter is not warranted.

Bridgeport argues that whether it was reasonable for them to have known about each act of infringement or not is a question for the jury. The Magistrate Judge would again point to summary judgment standards. In decided a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant must present sufficient

17

admissible evidence on a material issue to qualify his case to go to a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor. Id.

Bridgeport must first present evidence to defeat this motion for summary judgment to qualify it's case to go to the jury on this issue. Bridgeport's blanket assertion that it did not have, and could not have, actual knowledge of these albums until 2004 is not sufficient to defeat this motion for summary judgment. Perhaps Bridgeport failed to submit such evidence because it did not raise this argument until the 11th hour at oral arguments on November 2, 2006. Whatever the reason, as it stands in the present action, Bridgeport has not offered sufficient evidence to support it's argument that it cannot be chargeable with the knowledge of all infringements prior to the statute of limitations period. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). See also *Merchant v. Levy*, 92 F.3d 51, 56-57 ( 2nd Cir. 1996). Bridgeport was aware of the alleged infringement of "You'll Like It Too" in "I Know You Got Soul" at a minimum in 2001 when it filed it's massive filing, more than three years before the instant action was filed. As such, the Magistrate Judge believes that any claims accrued prior to May 12, 2002, should be barred.

## IV.    RECOMMENDATION

In the event the District Judge grants UMG's Motion to Enforce, as the Magistrate Judge has recently recommended, then UMG's first argument in the instant motion dealing with the sublicensee issue will be moot, as the product "Paid In Full (Expanded Edition)," sought to be summarily dismissed is contained in that settlement agreement. Further, with respect to UMG's second argument, any statute of limitation issue regarding "Paid in Full (Deluxe Edition)," will also be moot, as this product is also contained in that settlement agreement. However, the

second argument would be relevant to any remaining products in this action.

If the District Judge does not grant the Motion to Enforce, for the reasons stated above, the Magistrate Judge **recommends** that Defendant UMG's Motion for Partial Summary Judgment (Docket Entry 63) be **DENIED** in part and **GRANTED** in part. Specifically, the Magistrate Judge **recommends** that UMG's first argument regarding the sublicensee issue be **denied**, inasmuch as it appears that there are sufficient factual disputes to render summary judgment inappropriate. With regard to UMG's second argument, the Magistrate Judge **recommends** that UMG's motion for summary judgment be **granted** for any claims accruing prior to May 12, 2002.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 14th day of November 2006.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge