**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **Bridgeport Music Inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:05-0377** |
| **vs.** | ) | **Judge Campbell/Brown** |
| | ) | |
| **Robert Hill Music, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**I.      INTRODUCTION**

Presently pending before the Magistrate Judge is Defendant Universal-Songs of

Polygram International, Inc.'s ("USOP") Motion for Partial Summary Judgment.  This motion

has been referred to the undersigned for a Report and Recommendation (Docket Entry No. 78).

There are four arguments presented in USOP's Motion (Docket Entry No. 55).  The first

contends that Plaintiff's claims, under 17 U.S.C. § 507(b), must be limited to a three year period

prior to filing, specifically May 12, 2002 to May 12, 2005.  The second argument advances that

any claims arising from the alleged exploitation of "I Know You Got Soul" outside the United

States be dismissed as the Copyright Act does not have extraterritorial application without a

predicate act of infringement occurring within the United States.  The third argument contends

that any claims arising from the licensing for use of "I Know You Got Soul" in other

compositions be dismissed as this licensing does not rise to infringement because the new

1

compositions do not use any portion of Bridgeport's composition. Finally, the fourth argument claims that any income received from third party BMI for the public performance of "I Know You Got Soul" does not constitute infringement as blanket public performance licenses have been issued to BMI for both "I Know You Got Soul" and "You'll Like It Too."

The Magistrate Judge for the reasons stated below, **recommends** that Defendant USOP's Motion for Partial Summary Judgment be **GRANTED** in part and **DENIED** in part. Specifically, the Magistrate Judge **recommends** that USOP's motion for partial summary judgment be **granted** for any claims accruing prior to May 12, 2002. The Magistrate Judge **recommends** that USOP's motion for partial summary judgment be **denied** as to those claims arising from the foreign exploitation of "I Know You Got Soul," from derivative works of "I Know You Got Soul" *and* for any income received from BMI for public performance.

## II.   BACKGROUND

This is another of the myriad of cases growing out of the original massive filing by Bridgeport against a large number of defendants involved in one way or the other in the music industry in the original case of 3:01-0412. That case was subsequently severed into a number of smaller cases and litigation has proceeded unabated to date.

This particular case had its beginnings in <u>Bridgeport v. Crited Music, Inc. *et al*</u>, No. 3:01-0916. On January 11, 2005, the Plaintiff attempted to amend that complaint to add new claims (3:01-0916, Docket Entry 82), however, that attempt was denied (3:01-0916, Docket Entry 83).[1] Subsequently, four months later, Bridgeport filed the present case on May 12, 2005 (Docket

---

[1]As a basis for denial, the Court stated that it was time to bring the 2001 case to a conclusion and not add a new claim at this late date. The Plaintiffs were directed to file a new lawsuit and pay a filing fee. (3:01-0916, Docket Entry 83).

Entry 1). The Complaint alleges that Bridgeport had interests in the musical composition "You'll Like It Too" and that this song was improperly sampled in a new musical composition and sound recording "I Know You Got Soul." (Docket Entry 1). Plaintiffs allege in their Complaint that the various Defendant entities, including USOP, manufactured, distributed, marketed, licensed and/or sold various renditions of "You Know You Got Soul" containing unauthorized samples of their work "You'll Like It Too."

## III. LEGAL DISCUSSION

### A. Standard of Review

The Magistrate Judge has applied the well-established standard for determining summary judgment motions. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. The Higbee Company*, 256 F.3d 416, 419 (6th Cir. 2001).

In this connection, it must be noted that the nonmovant must present sufficient admissible evidence on a material issue to qualify his case to go to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, while the nonmoving party may produce some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could

3

reach a finding on that issue in favor of the nonmoving party.

**B.      Defendant UMG's Motion For Partial Summary Judgment**

USOP filed the instant motion on July 17, 2006 (Docket Entry 55), along with a supporting memorandum (Docket Entry 61), a statement of undisputed material facts (Docket Entry 135), the declarations of Robert E. Allen (Docket Entry 58) and Marc E. Mayer (Docket Entry 60), as well as a response to Bridgeport's statement of additional facts (Docket Entry 141) and a reply memorandum (Docket Entry 151).  Bridgeport has filed a memorandum in opposition (Docket Entry 102), the declarations of Jane Peterer (Docket Entry 124) and Ramona P. DeSalvo (Docket Entry 108), a response to USOP's statement of undisputed material facts (Docket Entry 136), and a statement of additional material facts (Docket Entry 105).

**1.      Whether Plaintiff's claims must be limited to a three year period prior to filing**[2]

17 U.S.C. § 507(b) Copyright Infringement and Remedies, Limitations on Actions, states that, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  The main argument between the parties on this issue is when the claim "accrued."  Both parties agree that a cause of action under the Copyright Act "accrues" when a plaintiff knows of the copyright infringement or is chargeable with such knowledge.  *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). See also *Merchant v. Levy*, 92 F.3d 51, 56-57 ( 2nd Cir. 1996).

USOP contends that the definitive date in most cases, including the instant case, is the date the action was filed, i.e. May 12, 2005.  (Docket Entry 64, Page 5-6).  Thus, USOP suggests that Bridgeport's claims be limited to a time period beginning three years prior, i.e. May 12, 2002.

---

[2]USOP's argument is identical to UMG'S argument on this matter.  (Docket Entry 63)

(Docket Entry 64, Page 6).

On the other hand, Bridgeport argues first that had it been allowed, on January 11, 2005, to amend it's complaint in the Crited Action, 3:01-0916, the amendment would have related back to the original filing date of that action, i.e. May 4, 2001, arguing that the proposed amendment arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original proceeding. Fed. R. Civ. P. 15(c)(2) (Docket Entry 118, Page 16). Therefore, Bridgeport suggests that May 4, 1998, three years prior to the original filing date in 3:01-0916, is the appropriate date. (Docket Entry 118, Page 6). Secondly, Bridgeport argues that the Court should toll the statute of limitations because it did not discover until approximately 2004 that certain albums were released in 2001. Bridgeport cites *Polar Bear Productions, Inc. v. Timex Corp.*, which states that the plaintiff's recovery is not barred by the statute of limitations when the plaintiff was unaware of the infringement and that lack of knowledge is reasonable under the circumstances. 384 F.3d 700 (9th Cir. 2004).

The Magistrate Judge rejects both Bridgeport's arguments and believes that USOP is entitled to summary judgment on all claims arising more than three (3) years prior to the filing of this lawsuit, i.e. May 12, 2002. The parties do agree that the statute of limitations is three (3) years. However, the parties differ as to what the starting date should be. Clearly, the most definitive date is the date of the filing of this litigation. The Sixth Circuit is very clear that in copyright infringement cases, the three year statute of limitations in Section 507 bars recovery of any claims based on damages accruing more than three years before the complaint was filed. *Hoste v. Radio Corp. of America*, 654 F.2d 11 (6th Cir. 1981). Because each act of copyright infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years

before suit was filed, but does not preclude infringement claims that accrued within the statutory period. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004).

Bridgeport's recourse in response to the denial of it's motion to amend in the Crited Action, 3:01-0916, was to immediately file the present action. Instead, it took Bridgeport approximately four months after the denial to file the present complaint. This demonstrates that Bridgeport was not prepared to bring the present action when it originally filed it's motion to amend. Further, while Bridgeport argues at length about the discretion of the Court to amend, it does not cite any authority which unequivocally demonstrates that had it been permitted to amend the Crited Action to include the present claims that this amendment would have related back to the original filing date. Further, Bridgeport argues that the stay in discovery in the Crited Action prevented them from discovering further infringements. The Magistrate Judge notes that had the original case never been filed, Bridgeport would still have a duty to police its copyrighted material without the benefit of discovery. There was notice of an infringement back in 2001, so therefore, Bridgeport should have conducted the necessary, complete investigation to determine exactly which products contained the known alleged infringing work at and after that time. Therefore, Bridgeport's first argument fails.

As to Bridgeport's second argument, which was raised for the first time at oral arguments on November 2, 2006, Bridgeport cites no controlling authority from the Sixth Circuit that deviates from it's prevailing view that the statute of limitations period is three years prior to the filing of suit. *Hoste v. Radio Corp. of America*, 654 F.2d at 11. Instead, Bridgeport cites the Ninth Circuit's *Polar Bear Productions, Inc. v. Timex Corp.,* to support it's proposition that it's recovery is not barred by the statute of limitations because it was reasonably unaware of portions of infringement. 384 F.3d 700 (9th Cir. 2004). However, perhaps because of the lateness of this argument, there is insufficient

evidence in the record to support their assertion that they were not aware of a portion of the infringements until 2004. The citations given by Bridgeport do little to advance it's claim that it was reasonably unaware of a portion of the infringements until 2004.. Ms. Peterer's declaration states that Bridgeport, while unable to obtain copies of all the albums themselves containing "I Know You Got Soul," did have a list of albums containing "I Know You Got Soul" which she found on the site allmusic.com. (Docket Entry 126). Further, Ms. DeSalvo's declaration is even less helpful as it merely states that she conducted substantial research of the proper parties involved, which were difficult to ascertain. (Docket Entry 128). There is nothing in the record which states that Bridgeport was unaware of a portion of the alleged infringing albums until 2004. There is nothing the record which identifies which specific albums Bridgeport was unaware of until 2004.

In *Polar Bear*, the Ninth Circuit addressed the issue of whether damages that occurred more than three years prior to the filing of a copyright infringement suit could be recovered. *Id.* The court held that it was possible to obtain such damages "so long as the copyright owner did not discover–and reasonably could not have discovered–the infringement before the commencement of the three-year limitation period." *Id.* The Ninth Circuit concluded on this matter stating that "because Polar Bear did not discover Timex's infringement within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside the three-year window." *Id.*

Even setting aside that this case is not controlling and contradicts *Hoste*, the facts in the instant matter are clearly distinguishable from those in *Polar Bear*. In *Polar Bear*, Timex agreed to sponsor Polar Bear's production of an extreme kayaking film. In return, Timex received an exclusive one-year license to use the film in it's promotional items. After this one year period expired, Timex continued to use images from the film in its promotional material used at trade

7

shows for a period of at least 5 years. Polar Bear did not learn of *any* infringement of it's product

until one of the producers of the film saw Timex's infringing promotional material at a trade show.

When Polar discovered this infringement, it was well beyond the limitations period. *Id*.

However, in the present case, there can be no dispute that Bridgeport had notice that the

composition "You Like It Too" was allegedly being infringed by the composition "I Know You Got

Soul" prior to the limitations period, i.e. May 12, 2002. In it's Complaint in the Crited Action, 3:01-

0916, *filed in 2001*, Bridgeport specifically alleged that UMG and USOP had infringed its copyright

in "You'll Like It Too" in the composition "I Know You Got Soul."

Upon it's discovery the alleged infringement in 2001, Bridgeport should have exercised

reasonable diligence to discover all products, then existing and those released after filing, containing

this alleged infringement. Bridgeport clearly discovered the operative facts that served as the basis

of it's copyright infringement cause of action prior to the limitations period. *Kepner-Tregoe, Inc.*

*v. Executive Development, Inc.*, 79 F.Supp.2d 474, 488 (D.N.J. 1999) citing *Wanlass v. General*

*Elec. Co.*, 148 F.3d 1334, 1339 (Fed. Cir. 1998)("upon discovering one infringing work, plaintiff

had a duty to monitor the defendant's additional published works because "[a] reasonable [copyright

holder], motivated by his interest in recovering for and preventing infringement, keeps abreast of

the activities of those in his field of endeavor.")   A copyright owner has an affirmative duty to

police all distributions of his work in order to preserve a legal monopoly.  Id.

Further, equitable tolling of the statute of limitations is considered on a "case-by-case basis"

and should be used sparingly *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001); *Cook v.*

*Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Moreover, to preserve the usefulness of statutes of

limitations as rules of law, the Supreme Court has held that equitable tolling should be invoked only

8

sparingly and should not be used to rescue a litigant from his own lack of diligence. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Bridgeport had sufficient knowledge of the parties and compositions involved to investigate all claims during the limitations period and therefore, tolling of the statute in the instant matter is not warranted.

Bridgeport argues that whether it was reasonable for them to have known about each act of infringement or not is a question for the jury. The Magistrate Judge would again point to summary judgment standards. In deciding a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant must present sufficient admissible evidence on a material issue to qualify his case to go to a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor. Id.

Bridgeport must first present evidence to defeat this motion for summary judgment to qualify it's case to go to the jury on this issue. Bridgeport's blanket assertion that it did not have, and could not have, actual knowledge of these albums until 2004 is not sufficient to defeat this motion for summary judgment. Perhaps Bridgeport failed to submit such evidence because it did not raise this argument until the 11th hour at oral arguments on November 2, 2006. Whatever the reason, as it stands in the present action, Bridgeport has not offered sufficient evidence to support it's argument that it cannot be chargeable with the knowledge of all infringements prior to the statute of limitations period. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). See also *Merchant v. Levy*, 92 F.3d 51, 56-57 ( 2nd Cir. 1996). Bridgeport was aware of the alleged

9

infringement of "You'll Like It Too" in "I Know You Got Soul" at a minimum in 2001 when it filed

it's massive complaint, more than three years before the instant action was filed.   As such, the

Magistrate Judge believes that any claims accrued prior to May 12, 2002, should be barred.

**2.      Whether claims arising out of foreign exploitation of "I Know You Got Soul" should be dismissed**

USOP argues that any claims arising from the alleged exploitation of "I Know You Got

Soul" outside the United states should be dismissed because any such income is exclusively derived

from the exploitation of the composition abroad, with no predicate act of infringement committed

within the United States.  (Docket Entry 61, Page 2).  Bridgeport argues that a motion for summary

judgment on this issue is premature in view of USOP's failure to respond to discovery requests.

(Docket Entry 102, Page 18-19).

The law applicable to this issue appears to be agreed upon by the parties.  It is well

established that the Copyright Act does not have extraterritorial application, absent a predicate act

of infringement committed in the United States. *Los Angeles New Service v. Reuters Television Int'l*

*Ltd.*, 340 F.3d 926 (9th Cir. 2003); *Subafilms, Ltd. v. MGM Pathe Communications Co.,* 24 F.3d

1088 (9th Cir. 1994)(Docket Entry 102, Page 16)(Docket Entry 61, Pages 8-9).  Further, the

Magistrate Judge agrees that "mere authorization" of allegedly infringing acts abroad does not give

rise to a claim under the Copyright Act–even where such "authorization" took place within the

United States.  *Subafilms*, 24 F.3d at 1099.

The Magistrate Judge further agrees with USOP that Bridgeport has not yet stated a valid

predicate act within the United States.[3]  However, the Magistrate Judge disagrees with USOP that

---

[3]At oral argument and/or in it's memorandum in opposition, Bridgeport argues that the predicate act was the authorization given to, and the receipt of payments from, foreign sub-publishers.  The Magistrate Judge believes that this is not sufficient to qualify as a predicate act

10

this entitles it to summary judgment on this issue. The record is replete with discovery problems

caused by both parties to this motion. Likewise, the briefs of the parties on this issue have not been

a great help. Relevant to the instant issue, upon review of numerous USOP responses to discovery,

it appears that USOP has refused to provide sufficient discovery responses on the topics of foreign

licensing, countries where the alleged infringing albums have been released as well as on sub-

publishers and sub-publishing agreements. (Docket Entry 108, Exhibit A (Intg. Nos. 12, 13), Ex.

B (Adm. Resp. No. 55) and C (Resp. Nos. 9, 10, 14, 20, 24, 25).

For example, Bridgeport requested the names of all countries in which the albums containing

"I Know You Got Soul" were distributed by one or more defendants as well as the names and/or

titles of all international releases on which the sound recording "I Know You Got Soul" appears.

(Docket Entry 108, Exhibit A (Int. 12, 13)). USOP objected to these interrogatories on the grounds

that they sought information that was not relevant to the subject matter of this action nor reasonably

calculated to lead to the discovery of admissible evidence, citing *Subafilms*. USOP then stated that

USOP had never distributed and/or released any albums on which "I Know You Got Soul" appears.

(Docket Entry 108, Exhibit A (Resp. 12, 13)). As another example, Bridgeport requested all

documents identifying information for each sub-publisher of the musical composition "I Know You

Got Soul." (Docket Entry 108, Exhibit C, Intg. 20). USOP objected to Bridgeport's request on the

grounds that the term "sub-publisher" was vague and is ambiguous.[4] (Docket Entry 108, Exhibit

C, Resp. 20).

The Magistrate Judge is not satisfied with the evidence, or rather the lack thereof, provided

---

under the applicable standard described above.

[4]The Magistrate Judge notes that USOP now makes frequent use of the term "sub-publisher" in the documents related to this motion for summary judgment.

by USOP with regard to the identity of its sub-publishers and the structure of its relationship with its sub-publishers.  In addition to the incomplete discovery responses above, the Magistrate Judge is concerned with the declaration of Mr. Allen, submitted by USOP in support of this Motion For Summary Judgment, specifically the "some (but not all)" language. (Docket Entry 58-1).  Mr. Allen states that:

> "Some (but not all) of USOP's foreign sub-publishers are companies affiliated with the Universal group of companies.  That is, the ultimate parent of some of those sub-publishers is the same as USOP's ultimate parent company.  However, USOP does not own or control any of its foreign sub-publishers.  Nor is it owned or controlled by any of these foreign sub-publishers.  USOP and its foreign sub-publishers are different companies, with different employees and different management structures."  (Docket Entry 58-1 ¶ 10) (Docket Entry 61, Page 3 and 4, Footnote 2).

Mr. Allen's declaration is insufficient to demonstrate the structure of the relationship between USOP and it's sub-publishers.  USOP cannot refuse to provide information and documentation on this issue and then turn around and seek summary judgement arguing that there is no evidence in the record to support a predicate act of infringement.  While affording Bridgeport an adverse inference from USOP's failure to fully response to its discovery requests is inappropriate at this time, the Magistrate Judge believes that if USOP continues to refuse to provide information on this issue, then this refusal might be presented to the jury, provided the necessary motions are filed in advance.

Because USOP has, to date,  failed to fully respond to discovery requests on this matter, the Magistrate Judge recommends that USOP's motion for summary judgment on this issue be denied.

**3.     Whether the claims arising from the licensing of "I Know You Got Soul" to third parties should be dismissed.**

USOP states that since May 2002,  "I Know You Got Soul" has been licensed for sampling in two songs, "International Affair" on February 4, 2005 and "Cop That Shit" on May 10, 2004.  USOP contends that any claims arising from the licensing for use of "I Know You Got Soul" in

12

these two compositions should be dismissed because these compositions do not use any portion of Bridgeport's composition. To support this contention, USOP submits the declaration of Robert Allen, the Vice President of Universal Music Publishing Group[5] (Docket Entry 58) and copies of the two licenses issued as well as copies of the two songs. (Docket Entry 58). Mr. Allen states that based upon his review of the licenses issued for these two songs, neither authorized the use of "You'll Like It Too" that is at issue in Bridgeport's lawsuit and neither of the two works contain any portion of "You'll Like It To." (Docket Entry 58, Page 4, ¶ 11). USOP argues that the licenses issued by USOP limit the third parties' use of "I Know You Got Soul" to lyrics only whereas the alleged infringement in this case does not involve lyrics but drum beats. (Docket Entry 61, Page 12). Further, at oral arguments held on November 2, 2006, USOP argued that Bridgeport did not sue these third parties because it could not prove that these compositions infringed it's composition. Lastly, USOP contends that there is no legally sufficient causal link between any alleged infringement and these profits. 17 U.S.C. § 504(b)

On the other hand, Bridgeport first argues that USOP's cited evidence in the record on this matter is insufficient for summary judgment. Specifically, Bridgeport argues that the declaration of Mr. Allen is insufficient to prove that the third party works do not contain "You'll Like It Too" because (1) Mr. Allen does not claimed to have listened to either of the two works; (2) even if Mr. Allen had listened, he is not an expert musicologist capable of rendering an opinion on whether there is any of the infringing material contained in these two works; and (3) neither of the licenses provided by USOP issued to the third parties expressly limits the use of "I Know You Got Soul" to

_____

[5]Universal Music Publishing Group is a fictitious "umbrella" name for a group of affiliated companies, such as USOP, engaged in the business of acquiring, licensing, owning, administering and exploiting copyrights in musical compositions. (Docket Entry 58, Pages 1-2).

lyrics only.  Additionally, Bridgeport argues that submitting copies of these two songs for the Court's musicological conclusion is inappropriate. (Docket Entry 102, page 14-16).  Lastly, Bridgeport makes the argument that this type of income is involved in it's claim for actual damages and/or profits, mainly in the form of lost licensing opportunities.  Specifically, Bridgeport creates a hypothetical situation wherein Bridgeport would have secured, via written assignment, some portion of ownership interest in "I Know You Got Soul" in exchange for a license to use "You'll Like It Too."  (Docket Entry 102, Page 14).  Bridgeport argues that this is customary both in the music industry and for Bridgeport and that upon becoming partial owner of "I Know You Got Soul," Bridgeport would then also co-own any further derivatives of "I Know You Got Soul" whether or not "You'll Like It Too" is embodied in the derivative work.

In it's reply brief, USOP argues that it is Bridgeport's burden to present evidence that the two compositions *do* have infringing work, i.e. not that USOP must prove that they *do not*.  Also, USOP contends that Bridgeport cannot recover actual damages based solely on a hypothetical license that may have been issued.  Lastly, USOP argues that Bridgeport will not be given co-ownership of "I Know You Got Soul" as a remedy in the instant case, as co-ownership is not a remedy for copyright infringement citing *Bridgeport Music, Inc. v. Estate of Christopher Wallace*, Case No. 3:05-0205.

17 U.S.C. § 504(b) Actual Damages and Profits states:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

14

The Magistrate Judge agrees with USOP regarding the burden argument about who has to prove the two works infringe or do not infringe. The Magistrate Judge notes that Bridgeport has presented no evidence that these two songs actually infringe "You'll Like It Too." Specifically, there are no expert opinions, nor even any lay opinions, in the record which establish that the two works infringe "You'll Like It Too." However, the Magistrate Judge believes that this is irrelevant, at least at present.

It is Bridgeport's second argument that the Magistrate Judge believes should preclude summary judgment on this issue. Bridgeport's argument that it would be entitled to part of USOP's profits from the derivative work of an infringing composition is persuasive, especially given the language of the statute above and it's statutory notes below.

The statutory note to 17 U.S.C. § 504(b) Actual Damages and Profits sets for the evidentiary burdens for recovery of profits, stating that:

> "Damages are awarded to compensate the copyright owner for losses from infringement and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act." [Further], "the language [of 504(b)] makes clear that only those profits 'attributable to the infringement' are recoverable; where some of the defendant's profits result from the infringement and other profits are caused by different factors, it will be necessary for the court to make an apportionment. However, the burden of proof is on the defendant in these cases; in establishing profits the plaintiff need prove only "the infringer's gross revenue," and the defendant must prove not only "his or her deductible expenses" but also "the element of profit attributable to factors other than the copyrighted work." *Id*. (emphasis added).

Thus, § 504(b) creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and (2) once that causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of the infringement. Therefore, to survive summary judgment, a copyright plaintiff seeking to recover the defendant's profits "must proffer some evidence to create a triable

15

issue regarding whether the infringement at least partially causes the profits that the infringer generated as the result of infringement." *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002); see also 17 U.S.C. § 504(b)

Therefore, the question is whether Bridgeport has sufficiently established a causal nexus between the infringement and the gross revenue it is claiming from the sampling licensing. The Magistrate Judge believes it is clear that Bridgeport has, to the extent possible given the discovery delays. Bridgeport is seeking USOP profits made from the licensing of the alleged infringing work itself to third parties. Bridgeport is not seeking USOP's entire gross revenue for the statutory period, merely that profit attributable to the song "I Know You Got Soul." *Mackie*, 296 F.3d at 915; 17 U.S.C. § 504(b). Further, at oral arguments, Bridgeport made the interesting argument that the use of it's composition, "You'll Like It Too," made "I Know You Got Soul" more popular and thus more valuable for licensing opportunities. Upon review, there is nothing in the licenses which demonstrate that either was limited to "lyrics only" as claimed by USOP. (Docket Entry 58). Lastly, it appears that, in exchange for licensing it's composition "I Know You Got Soul" to these two third parties, USOP did in fact receive a portion of the copyright in at least one of the derivative works. (Docket Entry 58, Exhibit 4, page 5). This lends credibility to Bridgeport's hypothetical that it would have received a portion of the copyright in "I Know You Got Soul," as described above.

While Bridgeport did not cite to expert testimony to establish it's arguments, this is due to the discovery delays on the part of both Bridgeport and USOP. The parties have recently agreed to an extended schedule for expert disclosures. (Docket Entry 174). Specifically, the parties have agreed that Bridgeport may have until December 6, 2006, to supplement their expert report as to economic damages. Therefore, at this time, it appears that there are sufficient factual disputes to

render summary judgement on this issue inappropriate.

**4.    Whether the claims arising from BMI public performance income should be dismissed.**

BMI is a performance rights organization that collectively licenses, as assignee of the rights of its copyright-holding clients (primarily publishers and songwriters) the public performance of such clients' copyrighted works.  It collects and pays royalties arising from licensed public performances of copyrighted compositions.  The issue in the instant motion is who is entitled to payment from BMI for the public performances of "I Know You Got Soul."

USOP argues that it does not publicly perform, nor does it issue public performance licenses for, "I Know You Got Soul."  Rather, USOP has given BMI a standard blanket license to issue public performance licenses for "I Know You Got Soul."  It is undisputed that Bridgeport has also issued a standard blanket license to BMI for "You'll Like It Too."  As such, USOP claims that any income it has received or will receive from BMI for the public performance of "I Know You Got Soul," even assuming "I Know You Got Soul" is infringing, does not constitute infringement as blanket public performance licenses have been issued to BMI for both "I Know You Got Soul" and "You'll Like It Too."  Specifically, USOP argues that any public performances are not infringing, and as such, revenue derived therefrom is not recoverable because BMI licensees were authorized by BMI to perform both songs. (Docket Entry 151).  To support it's contention, USOP relies mainly on *Freeplay Music, Inc. v. Cox Radio, Inc.*, 404 F.Supp. 548 (S.D.N.Y. 2005).

Bridgeport argues that the BMI blanket licenses do not authorize the creation of derivative works of compositions in the BMI repertoire.  Bridgeport further argues that the public performance income for infringing works should be paid to the copyright holder, not the infringer.  Additionally, Bridgeport argues that it's BMI membership is not an authorization for third parties, who are also

17

BMI members, to infringe Bridgeport's compositions. Specifically, Bridgeport contends that a BMI license does not authorize anything other than the public performance of a work by a BMI licensee and does not authorize BMI or it's public performance licensees to create an unauthorized derivative work. Lastly, Bridgeport argues that the *Freeplay* case cited by USOP is not on point in the instant case.

The Magistrate Judge agrees with Bridgeport. According to 17 U.S.C. § 504(b), Bridgeport may recover the actual damages it suffered as a result of the infringement of its work and may also recover profits of the infringer attributable to the infringement not taken into account in computing actual damages. Public performance fees are one of the primary sources of revenue from the exploitation of musical compositions. *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 45 (2nd Cir. 2002)(citing 6 *Nimmer* § 30.02 [F], at 30-102 (2002)). It is undisputed that USOP has received, or is entitled to receive, income from BMI for the public performance of "I Know You Got Soul." This revenue clearly falls within those damages and profits described in 17 U.S.C. § 504(b).

USOP's argument regarding the blanket licenses is simply nonsensical. If USOP's argument is accepted, any copyright holder issuing public performance licenses to BMI would then also be permitting any person to create unauthorized derivative works with their copyrighted compositions (and to collect the public performance revenue for these unauthorized derivative works), so long as these unauthorized derivative works were then licensed to BMI. This argument clearly contradicts not only the Copyright Act itself but is also clearly not what the *Freeplay* case purports.

In *Freeplay,* the Plaintiffs sued the Defendant radio stations claiming that these radio stations illegally broadcast its copyrighted music on the radio. *Freeplay*, 404 F.Supp.2d at 550. The Plaintiffs sued the radio stations for both playing broadcast programming containing infringing

18

materials that were supplied by an outside producer as well as for actually producing and then broadcasting infringing materials themselves. *Id.* at 549. The radio stations filed a motion for summary judgment requesting the dismissal of any claims based on their broadcasting infringing material *created by others*, arguing that the Plaintiff had registered its songs with BMI and the radio stations had secured performance rights from BMI to broadcast Plaintiff's songs. *Id.* at 550-51. The Court ruled that the BMI blanket license allowed the licensee radio stations to broadcast the programming containing the infringing materials supplied by the outside producers. *Id.* at 554-55. Specifically, the Court stated that "regardless of any violation of reproduction rights that may have occurred in the creation of a piece of programming, a party who has the right to perform the copyrighted work can perform it without itself becoming liable for the underlying infringement." *Id.* at 553 (citing *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 326 (2nd Cir. 1995)). The Court concluded that the broadcaster has the right to perform the work, and the fact that the 'program was tainted' by [the producer's] unauthorized use of [the] work' does not defeat that right. *Id.* Further, the Court specifically held that "The BMI licenses do not purport to authorize licensees to *reproduce* works of its affiliated copyright owners, however. Thus, holding a BMI blanket license would not authorize a licensee to engage in synchronization." *Id.* at 552.

In the instant case, Bridgeport is not suing the radio stations for their public performances of "I Know You Got Soul." Bridgeport is suing USOP, the undisputed partial copyright owner of the alleged infringing derivative composition, for any revenue it has received or will receive for the public performance of "I Know You Got Soul." As such, *Freeplay,* as well as all the other cases supplied by USOP on this issue, are clearly irrelevant to the instant case. Therefore, the Magistrate Judge recommends that USOP's Motion for Summary Judgment on this issue be denied.

19

## IV.    RECOMMENDATION

The Magistrate Judge, for the reasons stated above, **recommends** that Defendant USOP's Motion for Partial Summary Judgment be **GRANTED** in part and **DENIED** in part.  Specifically, the Magistrate Judge **recommends** that USOP's motion for partial summary judgment be **granted** for any claims accruing prior to May 12, 2002.  The Magistrate Judge **recommends** that USOP's motion for partial summary judgment be **denied** as to those claims arising from the foreign exploitation of "I Know You Got Soul," from derivative works of "I Know You Got Soul" *and* for any income received from BMI for public performance.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 17th day of November 2006.

/S/ Joe B. Brown

JOE B. BROWN
United States Magistrate Judge

20