UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIDGEPORT MUSIC, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:05-0377 |
| | ) | Judge Campbell/Brown |
| ROBERT HILL MUSIC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**TO: The Honorable Todd J. Campbell**

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

Presently pending before the Magistrate Judge is Defendant UMG Recordings Inc.'s ("UMG") Motion for Partial Summary Judgment. (Docket Entry 205). This motion has been referred to the undersigned for Report and Recommendation. (Docket Entry 214).

For the reasons stated below, the Magistrate Judge **recommends** that UMG's Motion for Partial Summary Judgment be **DENIED.**

**II.  BACKGROUND**

This is another of the myriad of cases growing out of the original massive filing by Bridgeport against a large number of defendants involved in one way or the other in the music industry, in the original case of 3:01-0412. That case was subsequently severed into a number of smaller cases and litigation has proceeded unabated to date.

In May 2003, Bridgeport and its related companies entered into a settlement agreement with

1

AOL Time Warner ("Warner Settlement Agreement") in which Bridgeport's claims against the Warner parties were settled. (Docket Entry 100, Exhibit 1, Excerpts of Warner Settlement Agreement). Among the released Warner parties was Unichappell Music, Inc. ("Unichappell"). In addition to the named parties already identified in specific actions, Bridgeport agreed to release, among others, "licensees" of the Warner parties. (Docket Entry 100, Exhibit 1).[1]

The instant case had its beginnings in <u>Bridgeport v. Crited Music, Inc. et al</u>, No. 3:01-0916 ("Crited Music action"). On January 11, 2005, Bridgeport attempted to amend that complaint to add new claims (3:01-0916, Docket Entry 82), however, that attempt was denied (3:01-0916, Docket Entry 83).[2] On May 12, 2005, approximately four months after it's attempt to amend the Crited Music action, Bridgeport filed the present case, alleging that Bridgeport had interests in the musical composition "You'll Like It Too" and that this song was improperly sampled in a new musical composition and sound recording "I Know You Got Soul" (Docket Entry 1).

In late 2005, settlement discussions began between Bridgeport and UMG (Docket Entry 18). From December 2005 through July 2006, the parties discussed the terms of a partial settlement agreement, trading emails and correspondence addressing which albums would be dismissed and for what reasons, i.e. whether UMG was a licensee of Unichappell under the Warner Settlement Agreement. During the course of these settlement discussions, Bridgeport raised a concern as to

---

[1] The settlement agreement states, ... "the term 'licensees' shall include all entities regardless of whether they are a named defendant in any of the Actions, whose rights to exploit any AOL Time Warner composition and/or sound recording or portion thereof, originate from an express or implied license granted, directly or through an intermediary, by any AOL Time Warner Party." (Docket Entry 100 ¶ 2c ).

[2] As a basis for the denial, the Court stated that it was time to bring the 2001 case to a conclusion and not add a new claim at this late date. The Plaintiffs were directed to file a new lawsuit and pay the filing fee. (3:01-0916, Docket Entry 83).

whether UMG was in fact a licensee of Unichappell and thus a beneficiary of the Warner settlement agreement entitled to release. Specifically, Bridgeport was concerned with whether Unichappell's 25% income participant interest gave Unichappell the right to license "I Know You Got Soul" to UMG. From April to July 2006, UMG provided copies to Bridgeport of what it contended to be licenses issued to UMG from Unichappell via it's mechanical licensing agent the Harry Fox Agency (Docket Entry 99, Exhibits 8 and 11, Docket Entry 147, ¶ 4, Exhibit C and Exhibit D, Pages 6-9). UMG contended that these licenses demonstrated that UMG was a licensee of Unichappell and therefore entitled to release pursuant to the Warner Settlement Agreement.

On July 17, 2006, the deadline date for dispositive motions, UMG filed a Motion for Partial Summary Judgment (Docket Entry 63) asserting that all claims related to one product, "Paid in Full (Expanded Edition),[3] should be dismissed as UMG is a sublicensee of Unichappell, and, pursuant to the Warner Settlement Agreement, Bridgeport released all sublicensees of Unichappell. The Magistrate Judge, in the Report and Recommendation which was later adopted by the District Judge, recommended that this request be denied. (Docket Entry 175 and Docket Entry 196). Specifically, the Magistrate Judge noted that the contradicting evidence in the record regarding whether Unichappell, as an income participant, was authorized to issue licenses for "I Know You Got Soul," as well as the disparate definitions as to what are the definitions, functions and rights of a publisher, administrator and income participant, presented sufficient factual disputes to render summary judgment for UMG inappropriate. (Docket Entry 175, Pages 10-12). The Magistrate Judge concluded that whether Unichappell is authorized to issue licenses and whether these licenses were then issued to UMG is a matter for trial. (Docket Entry 175, Page 12).

---

[3]This product is one of the products in UMG's instant motion as well.

At some point between July 2006 and October 2006, the parties settlement discussions broke down. On October 10, 2006, UMG filed a Motion to Enforce the Parties' Agreement to Dismiss Claims on Seven Products at Issue, or, Alternatively, for Leave to File a Dispositive Motion and Counterclaim ("Motion to Enforce") arguing that the parties had reached an agreement on all material terms. (Docket Entry 97). Bridgeport responded that Unichappell does not have any authority to issue licenses for "I Know You Got Soul," and as such, there is no possible way for UMG to be a Unichappell sublicensee entitled to release under the Warner Settlement Agreement. Bridgeport asserted that had it known that Unichappell was an income participant only, with no right to license "I Know You Got Soul," it would not have consented to the settlement agreement. As such, Bridgeport argued that because it was induced by the misrepresentation that UMG was a beneficiary of the Warner settlement as a Unichappell sublicensee, any purported settlement agreement was unenforceable. On November 2, 2006, the Magistrate Judge heard oral arguments on that motion. (Docket Entry 150).[4] On November 29, 2006, the District Judge found that the parties did not reach an agreement on all the material terms of the settlement agreement and as such, denied UMG's Motion to Enforce.[5] (Docket Entry 182).

## III. LEGAL DISCUSSION

### A. UMG'S Motion for Partial Summary Judgment

---

[4] See the Report and Recommendation regarding the Motion to Enforce for a detailed listing of the parties' arguments as well as evidence in the record. (Docket Entry 173).

[5] However, the District Judge granted UMG's alternative request for leave to file a counterclaim for breach of the settlement agreement (Docket Entry 182). Regarding this counterclaim, Bridgeport has filed a motion for judgment on the pleadings. (Docket Entry 240). This motion will be dealt with separately.

### 1. Standard of Review

The Magistrate Judge has applied the well-established standard for determining summary judgment motions. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. The Higbee Company*, 256 F.3d 416, 419 (6th Cir. 2001).

In this connection, it must be noted that the nonmovant must present sufficient admissible evidence on a material issue to qualify his case to go to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, while the nonmoving party may produce some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the nonmoving party.

### 2. The parties' arguments and the Magistrate Judge's findings

The Magistrate Judge notes that UMG makes essentially the same main argument as it did in it's prior motion for partial summary judgment, which was filed on July 17, 2007 (Docket Entry 63) and denied on December 8, 2006 (Docket Entry 196), and dealt with one product, "Paid in Full (Expanded Edition)." This product is included again in UMG's instant motion for partial summary

judgment, along with five other products.[6] UMG again contends that it is a sublicensee of Unichappell and therefore, pursuant to the Warner Settlement Agreement, it is a released sublicensee for these six products. UMG then provides copious documentation of what it purports to be either the licenses themselves or proof of written and/or oral licenses. (Docket Entries 207, 208, 209).

UMG further adds two new arguments. First, UMG contends that whether or not Unichappell had the right to issue any particular license and/or in what capacity it issued any license is immaterial so long as Unichappell did in fact issue a license to UMG for the alleged infringing composition. UMG contends that the Warner Settlement Agreement broadly provides that Bridgeport was obligated to release and discharge all licensees of Unichappell, regardless of whether these licensees were issued licenses by income participants and/or by copyright holders. As such, UMG advances that Bridgeport's contention that it was misled into executing any agreement because it did not know Unichappell issued licenses to UMG as an income participant is irrelevant. Along these lines, UMG also argues that Bridgeport has been fully aware since 2001, before it negotiated and executed the Warner Settlement Agreement, that Unichappell was an income participant only and yet Bridgeport still agreed to release licensees generally, including Unichappell. Second, UMG asserts that Unichappell has the right and/or ability to issue licenses to UMG because, regardless of Unichappell's income participant status, it is undisputed that Unichappell has the right to administer it's 25% income participation interest. UMG contends that the Harry Fox Agency has recognized Unichappell's administration rights by issuing dozens of licenses of the alleged

---

[6]In addition to "Paid in Full (Expanded Edition)," UMG includes (1) "Paid in Full;" (2) Paid in Full (Deluxe Edition);" (3) "Grand Theft Auto: San Andreas (Original Soundtrack);" (4) "20th Century Masters – The Millennium Collection: The Best of Eric B. & Rakim," and (5) The 18th Letter/The Book of Life." However, the parties have since filed a stipulation of dismissal regarding the product "Paid in Full (Original Soundtrack)." (Docket Entry 243).

infringing composition to UMG on behalf of Unichappell.

Like UMG, Bridgeport responds with it's own lengthy brief and extensive exhibit attachments.[7] Bridgeport argues, as it did in response to UMG's first motion for partial summary judgment, that Unichappell is not authorized to issue licenses for the alleged infringing composition because Unichappell is not a copyright holder, but rather, an income participant only with no copyright holder rights, including the right to license. Bridgeport argues that the purported licenses produced by UMG are nothing more than record-keeping documents whereby USOP and Unichappell's agent, the Harry Fox Agency, may track, collect, account for, and distribute the earned mechanical income. Again, Bridgeport supports this argument citing the deposition transcript of Robert Allen, who is affiliated with USOP, an undisputed co-owner of the alleged infringing composition. In his October 3, 2006, deposition, Mr. Allen stated that Unichappell has a 25% income participation interest in "I Know You Got Soul (rap version)" and, more importantly, does *not* have the right to license the composition "I Know You Got Soul (rap version)." (Docket Entry 149, Exhibit M, Page 6). Further, Bridgeport again cites the declaration of Kelly Isenberg, the Director of Legal and Business Affairs for Warner/Chappell Music,[8] which states that after "a reasonable search of Unichappell's records for agreements conferring rights upon Unichappell or its predecessors an interest in and to the musical composition "I Know You Got Soul (rap version)," she "could locate no such agreements." (Docket Entry 108, Exhibit G). Additionally, Bridgeport cites the declaration of Jane Peterer which states that based on her 48 years of experience in the

---

[7]The Magistrate Judge may refer to the exhibits by their original docket entries in some instances as the parties have filed duplicate exhibits of those previously filed.

[8]Unichappell is a subsidiary of Warner/Chappell. (Docket Entry 108, Exhibit G, ¶ 1).

7

music publishing and recording industry and her review of the documents in the related Crited action, Unichappell is an income participant only and is not authorized to enter into any licenses with third parties to grant any rights to exploit "I Know You Got Soul" in any manner absent a written transfer of rights from the copyright owner. (Docket Entry 126). As such, Bridgeport argues that because Unichappell is not authorized to issue licenses, UMG cannot be a released licensee of Unichappell pursuant to the Warner Settlement Agreement.

Bridgeport further asserts that Unichappell, in addition to not being a copyright owner of the alleged infringing composition, is also not an administrator of the composition. Bridgeport argues that USOP administers 100% of the alleged infringing composition and none of USOP's administration rights were transferred by USOP to Unichappell. Bridgeport argues that Unichappell, as an income participant, only has the right to receive 25% of the mechanical and performance income generated. To support this contention, Bridgeport again cites to the statements by Mr. Allen and Ms. Isenberg. (Docket Entry 149, Exhibit M; Docket Entry 108, Exhibit G).

Lastly, Bridgeport argues that the only licensees intended to be released by the Warner Settlement Agreement were those licensees who held licenses authorized directly from Warner copyright owners, not from Warner income participants. (Docket Entry 224, Exhibit A; Docket Entry 225-1, ¶¶ 9-14).

UMG filed a lengthy reply brief. (Docket Entry 236).[9] In it, UMG reiterates it's position that UMG is a licensee, regardless of whether Unichappell is an income participant or copyright owner and regardless of whether Bridgeport now claims that the licenses are invalid. UMG further argues

---

[9]In the future, reply briefs are limited to five pages, absent court permission. Further, reply briefs need not repeat arguments previously made.

that the licenses it has produced are clearly licenses, not record-keeping documents as alleged by Bridgeport, and have been authenticated as licenses by Unichappell's counsel and a representative of the Harry Fox Agency. (Docket Entries 238). UMG then again reiterates it's position that the plain language of the Warner Settlement Agreement releases *all* Warner licensees, that Bridgeport was not misled in any way when it executed this agreement, and that the intent of the parties to the Warner Settlement Agreement is clear and thus not rendered ambiguous by competing interpretations in the present litigation. Additionally, UMG, in a footnote, requests that the product, "18th Letter," which was originally listed as "18th Letter (Book of Life)," be dismissed as it does not contain the alleged infringing composition. (Docket Entry 236, Page 12, Footnote 10). Surely if UMG was serious in it's request, it would not make it in a footnote on the last page of a reply brief. While the Magistrate Judge would urge the parties to stipulate to the dismissal of this product if it does not contain the alleged infringing album, Bridgeport did not receive a chance to respond and therefore, UMG's request will not be considered.

Along these lines, and in spite of the large amount of material filed regarding the instant motion and the lengthy briefs, the parties' arguments remain basically the same. As stated previously, on November 2, 2006, the parties appeared before the Magistrate Judge regarding UMG's first motion for partial summary judgment on these issues. At that time, the Magistrate Judge heard in detail the majority of the arguments advanced in the instant motion and response.[10] As they did then, the parties still clearly disagree, and provide conflicting evidence in the record,

---

[10] UMG contends that it's first motion for partial summary judgment only briefly addressed it's current arguments regarding income participant licensees. However, the Magistrate Judge notes that the parties' arguments on this issue were fully addressed in the four hour November 2, 2006, hearing.

9

as to what are the definitions, functions, and rights of a publisher, administrator and income participant. Further, there are still conflicting statements between several material persons regarding whether Unichappell is authorized to issue licenses for "I Know You Got Soul." While UMG continues to submit copies of what it purports to be licenses from Unichappell along with supporting affidavits, USOP and Unichappell representatives Mr. Allen and Ms. Isenberg have previously indicated that Unichappell has no right, and no record of any right, to license the composition.

In addition to these same factual disputes previously addressed, the instant motion has evidenced one more. While Mr. Allen does state that Unichappell has the right to administer it's 25% income participation interest, whether this makes UMG a licensee under the Warner Settlement Agreement is also clearly disputed. UMG contends that the Warner Settlement Agreement releases all licensees, regardless of whether they received licenses from copyright holders or income participants. Bridgeport responds that income participants were not included. (Docket Entry 230, Exhibit 9, Page 182; Docket Entry 224, Exhibit A; Docket Entry 225-1, ¶¶ 9-14). Both parties' arguments regarding what constitutes a released licensee under the Warner Settlement Agreement would require the Magistrate Judge to determine the intent of the parties to the Warner Settlement Agreement, as the agreement itself is not unambiguous on this matter given the conflicting evidence regarding the rights and functions of administrators and income participants. There is insufficient undisputed evidence in the record for the Magistrate Judge to make this determination.

Given the above, there are clearly sufficient factual disputes which render summary judgment for UMG inappropriate. It still stands that whether Unichappell is authorized to issues licenses, whether these licenses were then issued to UMG, and whether it was the intent of the parties to the Warner Settlement Agreement to include income participant licensees in the release
10

are all matters for trial.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **recommends** that UMG's Motion for Partial Summary Judgment be **DENIED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 20th day of April, 2007.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

11

Case 3:05-cv-00377   Document 251   Filed 04/20/07   Page 11 of 11 PageID #: 3164